## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVNANIA

| | |
|---|---|
| ESTATE OF CLARA T. TROILO, deceased, by FRANK TROILO, Executor of the Estate of CLARA T. TROILO<br><br>                Plaintiff,<br>v.<br><br>ROSE TREE PLACE, NSL ROSE TREE PLACE, LLC d/b/a ROSE TREE PLACE, WATERMARK RETIREMENT COMMUNITIES, INC., WATERMARK RETIRMENT COMMUNITIES, LLC, WATERMARK OPERATOR, LLC, CYNTHIA EVANS AND KAREN MLAWSKY,<br><br>                Defendants. | Civil Action No.:<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442(a)(1) and 1446** |

## NOTICE OF REMOVAL OF CIVIL ACTION

Defendants Watermark Communities, LLC f/k/a Watermark Retirement Communities, Inc., Watermark Operator, LLC d/b/a Rose Tree Place, Cynthia Evans and Karen Mlawsky ("defendants") hereby remove this state action currently pending in the Court of Common Pleas, Philadelphia County, Pennsylvania to this District Court pursuant to 28 U.S.C. §§1331, 1441, 1442(a)(1), 1446, and 42 U.S.C. §§247d-6d, 247d-6e (2020), for the reasons described more fully below.

## PROCEDURAL HISTORY

1.      This civil action was initially filed on or about December 6, 2021 in the Court of Common Pleas, Philadelphia County, Pennsylvania, and captioned *Estate of Clara T. Troilo, deceased, by Frank Troilo, Executor of the Estate of Clara T. Troilo v. Rose Tree Place, et al.,* December Term 2021, No. 000073. *See* Plaintiff's Complaint appended hereto as Exhibit A.

1

2.     This case is removable under 28 U.S.C. §1441(a), on the basis of "original jurisdiction" because plaintiff's Complaint asserts a claim "arising under" federal law within the meaning of 28 U.S.C. §1331 by virtue of complete preemption under the Public Readiness and Emergency Preparedness ("PREP") Act and the existence of an embedded substantial federal question under *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005). This case is further removable under 28 U.S.C. §1442(a)(1), as defendants are being sued in connection with alleged acts undertaken at the direction of a federal officer.

## REMOVAL IS TIMELY

3.     Defendants' removal is timely under 28 U.S.C. §1446(b), as it is being filed within 30 days after service on the within defendants of a copy of the pleading from which it may be ascertained that the case is removable.

4.     Defendant NSL Rose Tree Place, LLC is not a proper party to this litigation as it is a former operator of the community and its operation of the community ceased years before the acts giving rise to causes of action alleged in plaintiff's Complaint took place; moreover, upon information and belief, this defendant has not been properly served.

5.     Concurrent with the filing of this Notice, defendants are serving this Notice of Removal upon plaintiff's counsel and filing a copy of this Notice of Removal with the Prothonotary of the Court of Common Pleas, Philadelphia County, pursuant to 28 U.S.C. §1446(d). A Disclosure of Corporate Interests Form is also being filed, as is a complete copy of the State Court File.

## INTRADISTRICT ASSIGNMENT

6.    The United States District Court for the Eastern District of Pennsylvania embraces the district and division in which the Philadelphia County, Pennsylvania state court action is now pending, and thus this Court is a proper venue for the action pursuant to 28 U.S.C. §110.

## PLAINTIFF'S CLAIMS

7.    Plaintiff's Complaint raises numerous allegations, including that decedent, Clara T. Troilo ("the decedent" or "Ms. Troilo"), contracted and died from COVID-19 on April 29, 2020. Plaintiff alleges that Ms. Troilo contracted COVID-19 in the community as a result of the manner in which defendants administered their COVID-19 countermeasure program, blaming her death on defendants' management of, and decisions regarding, COVID-19 testing protocols including the timeliness of defendants' disclosure of purportedly positive test results and additionally, the sufficiency of defendants' accommodations and care services as related to COVID-19. *See* Exhibit A.

8.    More specifically, plaintiff alleges, *inter alia*, that on or about March 7, 2020, defendants implemented "precautions" in response to the pandemic, including the creation of a "COVID-19 task force" and the administration of "COVID protocols, policies, procedures, safety measures," that included COVID testing and reporting, isolation rules, visitation restrictions, and changes to the resident care programs and other services, so as "to provide an umbrella of safety for residents" during the pandemic.  *See* Exhibit A at ¶¶ 23-31.

9.    Plaintiff further contends that defendants did not properly implement these COVID countermeasure protocols in that they did not timely report to residents and their families allegedly positive COVID-19 test results among residents of Rose Tree Place until April 22, 2020, when

defendants, for the first-time, notified residents and others about a resident testing positive for COVID-19. *Id*. at ¶32.

10.    Plaintiff alleges that defendants' "acts and omissions" in regard their countermeasure program planning and their failure to provide decedent with "safe accommodations" and sufficient "care services" during the COVID-19 pandemic resulted in the wrongful death of the decedent from COVID-19. *Id*. at ¶¶61 and 78.

11.    Plaintiff further claims that defendants' conduct was intentional to achieve a wrongful purpose in disregard to the obvious risks, reckless as well as negligent, causing decedent's death and other damages. *Id*. at ¶¶47-49. The Complaint includes causes of action including fraud, negligent misrepresentation, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and breach of contract and seeks damages under Pennsylvania's Wrongful Death and Survival Statutes. *See* Complaint, Counts I through VI.

## I.  JURISDICTION EXISTS UNDER 28 U.S.C. §1331 (FEDERAL QUESTION)

12.    This is a civil action over which the Court has original jurisdiction under 28 U.S.C. §1331. All claims in the Complaint arise from and relate to defendants' program planning decisions related to COVID-19, triggering the exclusive federal remedy under the PREP Act and completely preempting state law. Further, plaintiff's Complaint pleads the exclusive federal cause of action for death or serious physical injury resulting from willful misconduct, as statutorily defined, which must be brought before the federal court even if the claim is, as here, frivolous and unsupported by the resident's chart and the evidence. Accordingly, plaintiff's asserted state law claims invoke federal jurisdiction, making removal to this Court proper pursuant to 28 U.S.C. §1441 and 1446.

### A. Plaintiff's state law cause of actions are completely preempted by the PREP Act.

13.     Complete preemption is an exception to the well-pleaded complaint rule. *See Metro-Life Ins. Co. v. Taylor*, 481 U.S. 58, 64¬64 (1987).

14.     Complete preemption occurs when the "preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law Complaint into one stating a federal claim for purposes of the well-pleaded Complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quotation omitted); *Metro-Life*, 481 U.S. at 63-64 (complete preemption exists when the preemptive force of federal law is so powerful that it displaces any state law cause of action and leaves room only for a federal claim for purposes of the "well-pleaded complaint" rule). Complete preemption "'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)) (internal quotations omitted).

15.     According to the Third Circuit, complete preemption exists when: (1) a statute contains civil enforcement provisions within the scope of which a plaintiff's state law claims fall; and (2) there is a "clear indication of Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3rd Cir. 1988) (citing *Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for Southern Calif.*, 463 U.S. 1, 24 (1983)).

16.     The PREP Act is a complete preemption statute based on the plain language of the Act. As explained by the U.S. Department of Health and Human Services ("HHS") in a January 2021 Advisory Opinion issued by the Secretary's Office of General Counsel ("OGC"), the PREP

Act is a complete preemption statute based on its terms in that it establishes an exclusive federal remedy for claims falling thereunder.

17.     Congress enacted the PREP Act in December 2005 to encourage and coordinate a thorough, rapid, and comprehensive response to declared public health emergencies by granting broad immunity to covered persons (like defendants) for claims of loss related to the administration or use of covered countermeasures so that they may combat the emergency without fear of litigation or liability. *See* 42 U.S.C. §247d-6d(a)(1).

18.     Specifically, the legislation empowers the Secretary of HHS to issue a written declaration and provide that a "covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration of or the use by an individual of a covered countermeasure" during a health emergency. 42 U.S.C. §247d-6d(a)(l). The HHS Secretary's declaration is controlling and cannot be reviewed.  Indeed, the PREP Act provides that "[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection." 42 U.S.C. §247d-6d(b)(7). By these explicit directives, and particularly by making the actions of the Secretary non-reviewable, Congress intended the Secretary's declaration (including any amendments) to have the force of law.

19.     Under 42 U.S.C. §247d-6d(d)(l), "the sole exception to the immunity from suit and liability of covered persons ... shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct" as defined by the Act.

20.     For claims that do not assert "willful misconduct," the exclusive federal remedy for relief is established under §247d-6e, which permits an individual to claim no-fault benefits through the Covered Countermeasure Process Fund for a covered injury caused by the "administration or use of a covered countermeasure."

21.     State causes of action for claims relating to covered countermeasures are impermissible, as the PREP Act substitutes an exclusive federal cause of action and federal claims process in place of all state claims relating to the administration and use of covered countermeasures.

22.     The PREP Act further sets forth the procedures for the federal suit that it creates. Pursuant to subsection (e)(1), titled "Exclusive Federal Jurisdiction," any action for willful misconduct must be filed in the U.S. District Court for the District of Columbia. Such claims are also subject to heightened pleading requirements (*i.e.*, requirement that claims are to be plead with particularity) and verification of and submission of a physician declaration in support of the complaint; and are assigned to a three- judge panel which has jurisdiction to consider motions to dismiss and motions for summary judgment. 42 U.S.C. §247d-6d(e)(l), (e)(3) (e)(4) and (e)(5).

23.     Moreover, pursuant to §247d-6d(e)(l0),

> The United States Court of Appeals for the District of Columbia Circuit shall have jurisdiction of an interlocutory appeal by a covered person taken within 30 days of an order denying a motion to dismiss or motion for summary judgment based on an assertion for the immunity from suit conferred by subsection (a) or based on an assertion of the exclusion under subsection (c)(S).

24.     Thus, the PREP Act creates an exclusive federal cause of action for the claims asserted by plaintiff as well as the procedures and remedies governing that cause of action. It also establishes procedures for obtaining no-fault benefits through the Covered Countermeasure Process Fund, 42 U.S.C §247d-6.

25.     In addition, in the subsection of the PREP Act conspicuously titled, "PREEMPTION OF STATE LAW," Congress also provides, in relevant part, that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or in in conflict with, any requirement applicable under this section and relates to, among other things, use or administration of a covered countermeasure." 28 U.S.C. §247d-6d(b)(8).

26.     The PREP Act's exclusive two-part federal remedy, bolstered by its express preemption provision, forms the basis for complete preemption. Accordingly, where a cause of action falls within the scope of the PREP Act, the Act completely preempts that cause of action and confers federal subject matter jurisdiction thereon. It does not matter whether the complaint expressly raises a federal claim or whether it even cites the completely preemptive statute. Rather, the doctrine of complete preemption "converts [plaintiffs'] ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65.

27.     For the COVID-19 pandemic, the PREP Act was invoked on March 10, 2020, when the HHS Secretary issued a Declaration invoking the PREP Act. The Declaration was made effective as of February 4, 2020. In the Declaration, the Secretary pronounces that "Administration of Covered Countermeasures means physical provision of the countermeasures to recipients, *or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures.*" 85 Fed. Reg. 15198 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), 85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg.

79190 (Dec. 9, 2020), 85 Fed. Reg. 7872 (February 2, 2021), 86 Fed. Reg. 9516 (February 16, 2021), 86 Fed. Reg. 14462 (Mar.16, 2021), 86 Fed. Reg. 41977 (Aug. 4, 2021), 86 Fed. Reg. 51160 (Sept. 14, 2021) (*as corrected by* 86 Fed. Reg. 54696 (Oct. 4, 2021) and https://www.phe.gov/Preparedness/legal/prepact/10th-Amendment.aspx (December 30, 2021) (herein, "the Declaration").[1]

28.    On December 3, 2020, the Secretary issued a Fourth Amended Declaration under the PREP Act, effective as of February 4, 2020.  The Secretary's Fourth Amended Declaration provides that "COVID-19 is an unprecedented global challenge that requires a whole-of-nation response that utilizes federal, state, and local-distribution channels *as well as private-distribution channels*. Given the broad scale of this pandemic, the Secretary amends [Section VII of the Declaration to extend PREP Act coverage to additional private- distribution channels ...." (Emphasis added).

29.    The Fourth Amended Declaration specifically provides that Section VII of the Declaration is amended to extend liability protection under the PREP Act to Covered Persons for Recommended Activities that are related to: Covered Countermeasures that are:

> a.    Licensed, approved, cleared or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, *diagnose*, cure, *prevent*, mitigate, or limit the harm from COVID-19, *or the transmission* of SARS-CoV-2 or a virus mutating therefrom; or

[1] The Secretary subsequently issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020. The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act. On June 4, 2020, the Secretary further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. 85 FR 21012. Throughout the pandemic, HHS has reinforced the complete preemptive effect and the broad scope of the PREP Act in its Advisory Opinions and Amendments to the Declaration. To date, the Declaration has been amended ten times, six of which have been under the Biden Administration, further confirming the expansive breadth of the Act and its preemptive effect.

> b.     A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. (Emphasis supplied).

85 Fed. Reg. 79194, 79196-97.[2]

30.     The Fourth Amended Declaration further makes explicit that there can be situations where a decision *not* to administer a Covered Countermeasure to a particular individual can equate to the administration of a countermeasure to an individual under the PREP Act. For example, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." Fed.  Reg. 79194, 79197 (emphasis added).

31.     Additionally, the Fourth Amended Declaration provides that the Declaration must be construed in accordance with the HHS Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration ("Advisory Opinions").  Thus, the Fourth Amended Declaration incorporates all Advisory Opinions related to COVID-19 and the PREP Act into the Secretary's March 10, 2020 initiating Declaration, affording them controlling weight. 85 Fed. Reg. 79192, 79194-95.[3]

---

[2] Moreover, attached as Appendix A to the Advisory Opinion is a list of the "covered countermeasures" for which emergency use authorizations have been issued by the United States Food and Drug Administration. The list includes twelve pages of *COVID-19 test kits*, and provides that face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators are covered by an EUA. Surgical masks are not listed; however, such masks are Class II medical devices which are cleared by the FDA for use. (*See* 21 CFR 878.4040). Thus, *COVID-19 testing kits*, face masks, gowns, gloves and other PPE are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are included in an EUA.

[3] Section (b)(7) of the PREP Act provides that *"[n]o court of the United States, or of any state, shall have subject jurisdiction to review whether by mandamus or otherwise, any action by the Secretary under this subsection."* (emphasis added).  Also, where Congress has expressly delegated interpretive authority to an agency, that agency's

32.     On January 8, 2021, the HHS Secretary's Office of the General Counsel issued Advisory Opinion 21-01 ("AO 21-01") which further confirms that the PREP Act can be triggered by conscious decision making including in cases of non-use of covered countermeasures. This includes, as just one example, prioritization or purposeful allocation of a countermeasure and "particularly if done in accordance with a public health authority's directive." According to the opinion, the view that the PREP Act does not encompass alleged omissions to use of covered countermeasures "clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure.  In the opinion, HHS further indicates that the PREP Act is triggered by program planning.

33.     AO 21-01 also provides that the PREP Act is a complete preemption statute in that the "*sine qua non* of a statute that completely preemption is that it established either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both."

34.     The Fifth Amendment to the Declaration issued on February 2, 2021 under the Biden Administration reiterated that "[t]he plain language of the PREP Act makes clear that there is a complete preemption of state law." Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 86 Fed. Reg. 7872, 7874 (Feb. 2, 2021).

35.     The United States concurs with this position. In filing a Statement of Interest in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC,* the United States likewise asserts the PREP Act is a *complete preemption statute* with respect to the administration or use of covered

---

interpretative proclamations are controlling on federal courts. *See Chevron USA, Inc. v. Natural Resource Defense Council, Inc.*, 467 US 837, 843-844 (1984).

countermeasures based on its plain language. "*Two key provisions of the PREP Act operate together to demonstrate its completely preemptive nature: the immunity provision and the exclusive alternative remedy provision.*" *See* attached hereto as Exhibit B, a true and accurate copy of the Statement of Interest filed in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC,* Case 3:20-cv-00683 (M.D. Tenn.)

36.     A number of other statutes that are similar to the PREP Act also have been held to establish complete preemption and original federal jurisdiction**,** such as the Labor Management Relations Act ("LMRA"),[4] the Employee Retirement Income Security Act ("ERISA"),[5] the Federal Tort Claims Act ("FTCA"),[6] and the Air Transportation Safety and System Stability Act ("ATSSSA").[7]

---

[4] Any state law claims that are substantially dependent on analysis of a collective-bargaining agreement are completely preempted by section 301 of the LMRA and must be brought in federal court. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987). However, before an employee may bring a Section 301 claim in court, the employee must "at least *attempt to exhaust exclusive grievance and arbitration procedures* established by the [collective] bargaining agreement." *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x 127, 130 (2d Cir. 2005) (quotation omitted) (Emphasis added.)

[5] ERISA is another complete preemption statute that has a "firmly established federal policy favoring exhaustion of administrative remedies" for purposes of, *inter alia,* reducing the number of frivolous lawsuits, providing a non-adversarial method of claims settlement and minimizing the costs of claims settlement for all. *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993); *Paese v. Hartford Life & Acc. Ins. Co.,* 449 F.3d 435,445 (2d Cir. 2006).

[6] The FTCA, which is strikingly similar to the PREP Act, immunizes certain persons from liability and provides an administrative/judicial remedial scheme for claims falling thereunder.  The FTCA affords liability protection to federal employees for any negligent or wrongful acts committed while acting within the scope of their employment and provides an exclusive federal cause of action in the federal district courts against the United States under specified circumstances. Like the PREP Act, before a judicial action may be instituted, the claimant must first present the claim before the appropriate federal agency for adjudication. 28 U.S.C. § 2675. This jurisdictional requirement cannot be waived, *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), resulting in the dismissal of claims where a claimant fails to exhaust the administrative remedies.

[7] Congress passed the ATSSSA after the September 11th terrorist attacks to create an exclusive federal cause of action for damages "arising out of the hijacking and subsequent crashes" of the aircraft used in the attacks. ATSSSA § 408(b)(l), 49 U.S.C. § 40101. Like the PREP Act, the ATSSSA also includes a victim's compensation fund. Similar to the PREP Act, Congress' principal goals in enacting the ATSSSA "were to provide relief *without litigation* to individuals harmed as a result of the crashes and to *limit the liability of entities* that were likely to be sued for injuries suffered in connection with the crashes." *In re WTC Disaster Site*, 414 F.3d 352, 377 (2d Cir. 2005) (Emphasis added).

37.     Additionally, several courts have found the PREP Act to be completely preemptive. In *Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC*, 2021 U.S. Dist. LEXIS 105847 (W.D. Louisiana April 30, 2021), the Court held that the PREP Act is a complete preemption statute and that it "*exclusively encompass[es]* claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 2021 U.S. District LEXIS 105847 *4 at n.3 (W.D. La. Apr. 30, 2021). *See also Reilly v. Delta Healthcare II, LLC*, No. 8:21-cv-1013-JSM-JSS (M.D. Fla June 7, 2021); *Branch v. Lilac Holdings, LLC*, No. 21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021) (both conceding applicability of PREP Act in granting defendants' motions to dismiss based on immunities and other protections under the Act).

38.     In *Garcia v. Welltower OpCo Group*, the Court also held that the PREP Act provides for complete preemption in that "allegations of use and misuse" of covered countermeasures fall within the purview of, and are completely preempted by, the PREP Act. *Garcia v. Welltower OpCo Group*, 2021 WL 492581, at *7, *21 (C.D. Cal. Feb. 10, 2021).

39.     In *Parker v. St. Lawrence Co. Pub. Health Dept.*, 102 A.D. 3d 140, 954 N.Y.S.2d at 262 (2012), the court held that the narrower H1N1 Declaration issued pursuant to the PREP Act warranted an exclusive federal forum and further held that state courts have no jurisdiction to hear claims arising out, or concerning, a declaration issued pursuant to the PREP Act.

40.     And recently, the Third Circuit Court of Appeals – the only circuit court thus far to interpret the complete preemptive effect of the PREP Act – concluded in *Maglioli v. Alliance Holdings LLC d/b/a Andover Subacute & Rehabilitation I, et al.*, 16 F.4th 393 (3rd Cir., October 20, 2021), that the PREP Act is a complete preemption statute when willful misconduct is alleged. According to the Court, the PREP Act "unambiguously" creates an exclusive cause of action for

willful misconduct thereby establishing original federal jurisdiction over such claims allowing removal jurisdiction under 28 U.S.C. §§ 1331 and 1442. *Maglioli*, 16 F.4th at 409 (citing 42 U.S.C. §§247d-6d, 247d-6e).[8] *See also Singer v. Montefiore,* Civil Action No. 1:21-cv-02102 (N.D. Ohio December 27, 2021) (concluding that the PREP Act appears to fall into the narrow class of statutes that completely preempt a particular field so as to support removal where the plaintiff alleges death or serious physical injury caused by willful misconduct and agreeing with *Maglioli* insofar as it recognizes "[t]he PREP Act's language easily satisfies the standard for complete preemption of particular causes of action").

41.     Here, the Complaint, as fashioned by plaintiff, is a frontal attack on the acts and decisions of defendants in their role as "Program Planners" as defined under the PREP Act. Plaintiff's claims in this case are premised on alleged willful misconduct under the PREP Act, namely, alleged acts and omissions with regard to defendants' administration of their COVID countermeasure program—including their decisions and management of COVID-19 testing— purportedly taken intentionally to achieve an wrongful purpose, knowingly without legal or factual justification and in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit. And such acts and omissions were allegedly

---

[8] Defendants in *Maglioli* have moved for a rehearing and a rehearing *en banc* pursuant to F.R.A.P. 35 & 40, as the panel did not go far enough, erring with respect to, *inter alia*, its finding regarding the complete preemption of "non-willful" claims as the opinion is inconsistent with Supreme Court precedent in *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004), where the Court instructed that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Thus, the Third Circuit opinion is contrary to *Davila* in concluding only allegations of willful misconduct are completely preempted. As the Supreme Court instructed, the elements of a federal cause of action need not duplicate state causes of action to provide complete preemption. *Id.* at 215-16.  Thus, the PREP Act is completely preemptive, even if a plaintiff's state-law claims are not "strictly duplicative" of a willful cause of action under the PREP Act. Indeed, a PREP Act cause of action sounds in tort. 42 U.S.C. §§247d-6d(d)(1)–(2) (creating cause of action for "wrongful death or serious physical injury"). The elements of a PREP Act cause of action are: duty (*id*. at §247d-6d(b), (d)(1); breach (*id*. at §1247d-6d(c), (e)(3)(A); causation (*id*. at § 247d-6d(e)(3)(B); and injury/loss (*id*. at §247d-6d(a)(2)(A), (e)(3)(C). The PREP Act sets a standard of liability (*id*. at §247d-6d(c)(1)) and a burden of proof (*id*. at §247d-6d(c)(3)). And the ways in which the PREP Act duties can be breached are itemized in §247d-6d(c)(1)(A). Accordingly, *Maglioli* is not yet final or binding on this Court.

perpetrated by defendants for the wrongful purpose of, among others, keeping plaintiff's decedent as a resident in the community so that defendants could earn additional fees. *See* Exhibit A.

42.    And to the extent that the Complaint asserts any non-willful claims, they are subject to the Court's supplemental jurisdiction under 28 U.S.C. §1367 because they are "so related to the willful misconduct claims … that they form part of the same case or controversy." Moreover, as long as one claim triggers complete preemption, there is federal jurisdiction over the entire suit. *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011) ("district court had subject matter jurisdiction if at least one of [plaintiff's] claims were completely preempted"); *see also Giles v. NYL Care Health Plans, Inc.*, 172 F.3d 332, 337-38 (5th Cir. 1999).

### B.    The PREP Act applies to plaintiff's claims.

#### 1.  Defendants are "covered persons" under the statute.

43.    The PREP Act applies to "covered persons" who administer or use a "covered countermeasure" during a "recommended activity" in relation to COVID-19. 42 U.S.C. §247d-6d.

44.    Pursuant to the Act, a "covered person" includes, *inter alia*, "program planners" and "qualified persons" who prescribe, administer, or dispense covered countermeasures. 42 U.S.C.§247d-6d(i)(2).

45.    "Qualified persons" include licensed health professionals and other individuals authorized to prescribe, administer, or dispense covered countermeasures under state law, as well as other persons identified in a declaration by the Secretary. 42 U.S.C. §247d-6d(i)(8).

46.    "Program planners" include state and local governments or other persons who supervise or administer programs that dispense, distribute, or administer covered countermeasures, *or* provide policy guidance, facilities, and scientific advice on the administration or use of such countermeasures. 42 U.S.C. §247d-6d(i)(6).

47.     The meaning of "program planner" and "qualified person" has been clarified as follows:

> …State or local government, including an Indian tribe, a person employed by the State or local government, *or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product*, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with [the Secretary's declaration].

42 U.S.C. §247d-6d[i][6] (Emphasis supplied).

48.     Under the Secretary's declaration, *"[A] private sector employer or community group or other 'person' can be a program planner when it carries out the described activities."* 85 Fed. Reg. at 15,202.

49.     Furthermore, on August 14, 2020, the HHS Secretary's Office of General Counsel confirmed that senior living communities are "covered persons" subject to immunity under the PREP Act as "program planners" and "qualified persons." [OGC Letter to Thomas Barker.] The Office of General Counsel also published a Guidance confirming that COVID testing in nursing homes is a covered countermeasure triggering the Act.[9]

50.     On October 23, 2020, the HHS Office of the General Counsel's Advisory Opinion No. 20-04 ("AO 20-04") verified that the term "program planner" is broadly defined.[10] The opinion also explained that PREP Act coverage will apply to a covered person using a covered

---

[9] HHS, Office of the General Counsel, Letter to Thomas Barker, Foley Hoag LLP (Aug. 14, 2020) *available at* https://www.govinfo.gov/content/pkg/FR-2020-08-24/pdf/2020-18542.pdf [Aug. 31, 2020].

[10] HHS, Office of the General Counsel, "Advisory Opinion No. 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration Under the Act" (Oct. 22, 2020, as modified Oct. 23, 2020), *available at* (https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf [Advisory Opinion 20-04.]

countermeasure in accordance with any public health guidance from an "Authority Having Jurisdiction."

51.    The January 8, 2021 AO 21-01 more broadly outlined that a "program planner" under the Act is "someone who is involved in providing or allocating covered countermeasures," and that "program planning inherently involves the allocation of resources." The Advisory Opinion thereby concluded that "decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning and is expressly covered by [the] PREP Act."

52. Defendants qualify as a "covered persons" under the PREP Act. During the relevant time period set forth in the Complaint, defendants acted as both a "qualified person" and a "program planner" in that defendants operated a senior living community licensed by the Commonwealth of Pennsylvania as alleged in the Complaint.

53.    Defendants also employed various medical professionals including administrators, nursing personnel and nursing aides who were authorized to allocate, administer, prescribe, and dispense the covered countermeasures described in plaintiff's Complaint, including, COVID testing materials. Additionally, as alleged in the Complaint, these individuals developed, administered, and oversaw policies, procedures, and programs related to infection control, which included decisions and considerations regarding testing, COVID precautions and countermeasures, visitor restrictions and patient isolation.

54.    Defendants were "program planners" since they admittedly are alleged to have supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of covered countermeasures, which included decisions pertaining to the allocation and administration of covered countermeasures such as testing, as well as how to administer their countermeasure program during the relevant time period. Defendants' actions with

respect to the coordination and implementation of COVID-19 countermeasure infection control programs inherently involved conscious decision making relating to the administration of COVID-19 testing, including the timing and reporting of such results.

55.     The decisions with respect to the reporting of COVID-19 testing results and the decisions as to the management of defendants' countermeasure program in providing safe accommodations for their residents during the pandemic (and even including--isolation of residents for infection prevention and visitor restrictions) go directly to the heart of the Complaint.

56.     This matter also does not involve nonfeasance or total inaction but instead relates to the propriety of defendants' decisions in managing their COVID-19 countermeasure and infection control program and the manner in which it was implemented by defendants, including decisions pertaining COVID-19 testing, thereby implicating the PREP Act.

**2.      Plaintiff's claims arise from defendants' use and administration of "covered countermeasures."**

57.     The PREP Act is invoked when there is an allegation of a claim for loss "caused by, arising out of, *relating to*, or resulting from the administration to or the use by an individual of a covered countermeasure" to prevent, mitigate or treat COVID-19. 42 U.S.C. §247d-6d(a)(1) (emphasis added),

58.     Under the PREP Act, a "covered countermeasure" includes: "(1) a qualified pandemic or epidemic product (as defined in §247d-6 (i)(7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the HHS Secretary determines to be a priority for use during a public health emergency declared under section 247d." 42 U.S.C. §247d-6d(i)(1). A "qualified pandemic or epidemic product" is defined as: a drug, biologic product or device that is:

"(A)(i) a product manufactured, used, designed, developed, modified, licensed, or procured—

(I) to *diagnose*, mitigate, prevent, treat, or cure a pandemic or epidemic; or
(II) to limit the harm such pandemic or epidemic might otherwise cause;
(ii) a product, manufacture, used, designed, developed, modified, licensed, or procured   to *diagnose*, mitigate, prevent, treat, or cure a serious of life-threatening   disease or condition caused by a product described in clause (i); or
(iii) a product or technology intended to enhance the use or effect of a drug, biologic product, or device described in clause (i) or (ii); and

(B)(i) approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act or licensed under section 262 of this title;
(ii) the object of research for possible use as described in subparagraph (A) and is the subject of an exemption under section 505(i) or 520(g) of the Federal Food, Drug,        and Cosmetic Act; or
(iii) authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug and Cosmetic Act."

*See* 42 U.S.C. §247d-6d(i)(7).

59.     The March 17, 2020 Declaration expanded the categories of "covered countermeasures" eligible for immunity to include any device used to treat, diagnose, cure, prevent or mitigate COVID-19 or its spread.[11] The Declaration was subsequently amended to add respiratory protective devices like COVID tests to the list of covered countermeasures. *See* 42 U.S.C. §247d-6d(i)(1)(D); *see also* 85 Fed. Reg. at 21,014.

---

[11] To date, a large number of diagnostic tests for using in detecting or preventing the spread of COVID-19 have been approved, licensed, or cleared by the FDA, or are subject to an EUA. *See* FDA Combatting COVID-19 with Medical Devices, https://www.fda.gov/media/136702/download. HHS retroactively "extended PREP Act coverage to licensed health care practitioners prescribing or administering FDA-authorized COVID-19 tests" in October 2020, and even confirmed that PREP Act coverage extends to "of-label (outside the authorization) use. *Letter from the Secretary of HHS*, dated August 31, 2020, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-coverage-for-screening-in-congregate-settings.pdf.

60.     On June 8, 2020, the Declaration was amended again to reflect the HHS's original intent to "identify the full range of qualified countermeasures" as permitted under the PREP Act. 85 Fed. Reg. 35100. Thus, a covered countermeasure includes a broad range of products and devices specified as: (i) a qualified pandemic or epidemic product; (ii) a security countermeasure; (iii) a drug, biological product, or device that the U.S. Food and Drug Administration (FDA) has authorized for emergency use; and (iv)a NIOSH-approved respiratory protective device.

61.     Immunity provided under the PREP Act applies not only to claim that result from the actual use of specific products, but also from all activities and decisions that go along with such use, such as the running of a countermeasure distribution program or facility (*i.e.*, "program planning").

62.     In this case, plaintiff has alleged that defendants implemented "precautions" in response to the pandemic, including the creation of a "COVID-19 Task Force" and the administration of "COVID protocols, policies, procedures, safety measures" that included COVID testing and reporting, isolation rules, visitation restrictions, and changes in resident care programs and other services, so as "to provide an umbrella of safety for residents" during the pandemic. *See* Exhibit A, ¶¶ 23-31.

63.     In addition, plaintiff contends that defendants did not properly implement these COVID countermeasure protocols in that they did not timely report to residents and their families allegedly positive COVID-19 test results among residents of Rose Tree Place until April 22, 2020, when defendants, for the first-time, notified residents and others about a resident testing positive for COVID-19. Defendants deny these allegations but taking these allegations at face value for purposes here, defendants' decisions as to how to administer COVID-19 testing, including the timeliness of disclosure of any positive results, are acts "related" to the "administration of a

countermeasure program or facility." Plaintiff's claims for damages thus allegedly resulted from defendants' "program planning" and how defendants administered their countermeasure program or facility.

64.    Plaintiff's claims therefore relate directly to use and administration of countermeasures, including COVID testing materials that qualify as pandemic or epidemic products under the PREP Act.[12]

### 3.    There is a causal nexus between defendants' administration or use of covered countermeasures and plaintiff's claims of loss.

65.    The PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the . . . distribution . . . purchase, donation, dispensing, prescribing, *administration*, licensing, or use of such countermeasure." 42 U.S.C. §247d-6d (a)(2)(B).

66.    While the term "administration" is undefined in the PREP Act, the Declaration explained that "Administration of a Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and *decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures*." 85 Fed. Reg. at 15,200. Thus, the definition of "administration" extends not only to the physical provision of countermeasures to recipients, such as COVID-19 tests, but also "to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving

---

[12] https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/in-vitro-diagnostics-euas-molecular-diagnostic-tests-sars-cov-2

security and queuing, but only insofar as those activities directly relate to the countermeasure activities." *Id*.

67.     HHS has confirmed time and again that "administration" under the PREP Act encompasses activities related to "management and operation" of COVID-19 countermeasure programs and those facilities that provide countermeasures to recipients. *See* Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, p. 6-7 (October 23, 2020).

68.     "[D]ecision-making" related covered countermeasures "is expressly covered by the PREP Act." *See* Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, p. 4 (January 8, 2021

69.     And notably, test reporting is a necessary part of the administration of the COVID-19 diagnostic test, because it is part of the "management and operation of the countermeasure program" and involves "activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures" to mitigate the spread of COVID-19. *See* Declaration, 85 Fed. Reg. at 15,202; HI-IS, "COVID-19 Pandemic Response, Laboratory Data Reporting:     CARES     Act     Section     18115,"     January     8,     2021, https://www.hhs.govisites/default/files/covid-19-laboratory-data-reporting-guidance.pdf.

70.     Significantly, *Maglioli* confirms that the Secretary of HHS has broad and extensive non-reviewable authority for all substantive applications of the PREP Act, as bestowed on him by Congress. *Maglioli*, 16 F.4th at 401. Specifically, the Third Circuit Court declared that "the Secretary controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act." The Secretary defines those "acts and omissions" that fall under the Act. *Id*.

71.     The Office of the Secretary has further confirmed -- including in AO 21-01 -- that the PREP Act is triggered with regard to "a conscious decision" as to how and when covered countermeasures are administered.

72.     The Advisory Opinion clarifies that the PREP Act should be applied to the broadest extent possible, and even in rare instances where a plaintiff argues that "defendant failed to make any decisions whatsoever," federal courts are "*free to entertain discovery to ascertain, for jurisdictional purposes, the facts underlying the complaint*." (citing *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 2014 WL 4059889 at *1 (M.D. Fla. Aug. 14, 2014).

73.     In the present matter, plaintiff's Complaint on its face alleges willful misconduct and other claims arising from Rose Tree Place's administration of and program planning with regard to COVID-19 countermeasures.

74.     Plaintiff specifically alleges that defendants implemented "precautions" in response to the pandemic, including the creation of a "COVID-19 Task Force" and the administration of "COVID protocols, policies, procedures, safety measures" that included COVID testing and reporting, isolation rules, visitation restrictions, and changes in resident care programs and other services, so as "to provide an umbrella of safety for residents" during the pandemic. *See* Exhibit A, ¶¶ 23-31. Plaintiff further contends that defendants sent residents, their families and friends, email updates to share information concerning COVID-19, but plaintiff criticizes the management of their COVID countermeasure program including as to testing.

75.     It is therefore clear that defendants are alleged to have made conscious decisions concerning administration and use of their COVID-19 countermeasure infection control program, in their efforts to prevent the spread of COVID-19. The actions allegedly taken by defendants in this matter are precisely the types of actions—administration and use of countermeasures and

program planning—which fall under and are to be given "sweeping" protections under the PREP Act.

76.     Accordingly, plaintiff alleges facts that arise out of and relate to the administration and use of COVID countermeasures including a COVID-19 diagnostic test, and the facts squarely satisfy the elements of PREP Act willful misconduct. *See* 42 U.S.C. §247d-6d(c)(1)(A). The PREP Act therefore provides an exclusive federal cause of action for Plaintiff's claims, giving rise to original federal jurisdiction, and as a consequence allows removal under 28 U.S.C. §1441.

## II.     JURISDICTION ALSO EXISTS PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE (28 U.S.C. § 1442(a)(1)

77.     Removal is also proper under 28 U.S.C. §1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.

78.     Under the Federal Officer Removal Statute, a federal court has jurisdiction over a civil action that is directed at "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. §1442(a)(1).

79.     The statute is premised on the existence of a "federal interest in the matter" and the need to enforce "federal law through federal officials." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) ("right of removal under §1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court"). Unlike the general removal statute, the Federal Officer Removal Statute is to be "broadly construed" in favor of a federal forum. *See Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457, 466-67 (3d Cir. 2015) ("*Defender Ass'n*").

80.     This case is removable pursuant to §1442(a) because "(1) defendants are 'persons' within the meaning of the statute; (2) plaintiff's claims are based upon defendants' conduct 'acting under' the United States, its agencies, or its officers; (3) plaintiff's claims are 'for or relating to' an act under color of federal office; and (4) defendants raise a colorable federal defense to plaintiff's claims." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). All requirements for removal under §1442(a)(1) are satisfied here.

### A.  Corporate defendants are "persons" within the meaning of the statute.

81.     Corporate defendants qualify as "persons" under the Federal Officer Removal Statute. Watermark Communities, LLC and Watermark Operator, LLC are corporate entities, and corporations are "person[s]" pursuant to Section 1442(a)(1). *Papp*, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation is in legal fact a person" (citing 1 U.S.C. §1)).

### B.  Defendants were "acting under a federal officer" because they were involved in an effort to assist or to help carry out the duties or tasks of a federal superior.

82.      To satisfy the second requirement ("acting under" a federal officer) of the statutory test, "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson v. Philp Morris Cos.*, 551 U.S. 142, 152 (2007).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

83.     A private party need not act as an agent of a federal agency. Rather, it is enough that the person is acting on behalf of the officer in a manner *akin* to an agency relationship. *Doe v. UPMC*, No. 2:20-cv-359, 2020 U.S. Dist. LEXIS 136077, at *9 (W.D. Pa. July 31, 2020); *City of San Mateo v. Chevron Corp.*, 960 F.3d 586, 599 (9th Cir. 2020) (citing *Watson,* 551 U.S. at 151)

84.     In particular, the Supreme Court has noted that federal officer jurisdiction can be found "[w]here a private person acts as an assistant to a federal official in helping that official to enforce federal law." *Id*. The Supreme Court has stated:

> [T]he removal statute applies to private persons "who lawfully assist" the federal officer "in the performance of his official duty" … if they were "authorized to act with or for [federal officers or agents] in affirmatively executing duties under … federal law."

*Watson*, 551 U.S. at 151 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883) and *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966)).

85.     Here, defendants were subject to "direct and detailed control" of the federal government. *See Paldrmic v. Altria Corp. Servs., Inc.*, 327 F. Supp. 2d 959, 964 (E.D. Wis. 2004). "Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon." *Ryan v. Chemical Co.,* 781 F. Supp. 934, 947 (E.D.N.Y. 1992) (private party can remove if it can show that conduct for which it is being sued is "closely linked to detailed and specific regulations"). This test has been described as one of "regulation plus." *Bakalis v. Crossland Sav. Bank*, 781 F. Supp. 140, 145 (E.D.N.Y. 1991) ("The rule that appears to emerge from the case law is one of 'regulation plus . . .'."). This line of cases was summarized in *Ryan*:

> An examination of previous cases in which private corporations and individuals have been allowed removal under section 1442(a)(1) is helpful in establishing the indicia of official control necessary to warrant removal. The rule established is that removal by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations. *Cf. Bakalis v. Crossland Sav. Bank*, 781 F. Supp. 140, 144-45 (E.D.N.Y. 1991) ('The rule

that appears to emerge from the case law is one of 'regulation plus . . .'.').

781 F. Supp. at 947.

86.     Defendants' assistance to the federal government in its efforts to control the spread of COVID-19 went far beyond a mere response to any purported federal regulation and satisfied both the *Watson* "instruction, direction, or guidance" and "regulation plus" tests.

87.     At the outset of the pandemic, HHS identified medical and healthcare providers as its "critical partners", and the federal government also designated them as members of the nation's "critical infrastructure." Moreover, the broad purpose of the PREP Act is to provide a unified, rapid federal response to a national public health threat, and to prevent critical partners from being distracted by the cost and conflicting standards of litigation in multiple forums. 85 Fed. Reg. 79,190, 79,190 and 79,191 (noting the PREP Act allows for a "unified, whole-of-nation" response). These providers—including defendants—had a "special responsibility" to assist the government in its efforts to mitigate the spread of the virus, continue operations, and ensure implementation of federal, state and local mandates and directives in the interest of public safety and delivery of critical infrastructure services. *See, e.g.,* HHS Ofc. of Gen Counsel, Response Letter to Thomas Baker (Aug. 14, 2020), 1, 2, n. 3; 85 Fed. Reg. at 15, 202 (state licensed facilities are "authorized in accordance with the public health and medical emergency response of the AHJ"); 85 Fed. Reg. 79,190 n. 6 (noting "authorizations that the HHS Office of the Assistant Secretary for Health (OASH) has issued as an Authority Having Jurisdiction" to Nursing Homes and Assisted Living Facilities); *Id.* at 79,193 n. 17 (referencing "examples" of Covered Persons "authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures"); 79,195, n. 20 (determining Nursing Homes and Assisting Living Facilities to

be qualified persons and citing "*Guidance for PREP Act Coverage for COVID-19 Screening Tests at Nursing Homes, Assisted-Living Facilities, Long-Term-Care Facilities, and other Congregate Facilities*").

88.     The PREP Act and nearly all of HHS's COVID-19 directives declare that the federal government relied on its close, directed relationship with licensed senior assisted living communities for its "whole-of-nation" response. In fact, HHS distinguishes healthcare entities like defendants as a subset of potential "program planners." *See* AO 20-04. While HHS "re-emphasizes the breadth of PREP Act immunity" for potential program planners and qualified persons otherwise administering or using countermeasures, it notes that "[s]uch entities are not limited to healthcare professionals" but distinguishes "*healthcare companies that are part of a government response to the COVID-19 pandemic.*" Id.

89.     The PREP Act is just on component of HHS's broad authority under the larger Public Health Services Act ("PHSA"). 42 U.S.C. §201, *et seq.* (providing for the federal supervision of public/private health service provision and federal-state cooperation). Pursuant to the PHSA and the PREP Act, HHS is authorized to *deputize private entities to support the national coordinated response and set the breadth of protections in exchange for their participation*. 42 U.S.C. §§247d-6d(b)(3)(A-B), (d), (i)(2), (i)(6). Congress has provided that HHS will determine which "private corporation" acting as a "person" under the PREP Act will be utilized as "program planner" and thereby be authorized to administer a countermeasure program or facility pursuant to HHS and AHJ direction.[13]

---

[13] Additionally, Congress expressly refers to federal officer involvement in subsections (d)(1) and (f) of 42 U.S.C. § 247d-6d. In subsection (f), Congress provides that federal "agencies" (such as HHS), "instrumentalities" (such as AHJs, healthcare infrastructure participants, and senior living facilities), and "officers" (such as program planners) will keep federal statutory protection, such as § 1442(a), regardless of any provision of the PREP Act: § 247d-6d(f) (emphasis added). Subsection (f) refers to the types of legal protections for federal officers, such as Defendant, by citing to "other provisions of law," "any defense protection," and "any other law" which would include the protections

90.     During the COVID-19 pandemic, HHS bolstered its healthcare infrastructure by marshaling public and private healthcare resources led by a coordinated network of government AHJs. HHS expressly likened declared program planners such as defendants to federal contractors referring numerous times in its Declaration to PREP Act protections extending not only to those entities having federal contracts, but to those authorized under AHJs to administer, distribute, and dispense countermeasures. 85 Fed. Reg. at 15,200-15,200. HHS explains that the PREP Act protections also apply to the "officials, agents, employees, and volunteers" of AHJs such as defendant Rose Tree Place which was a state licensed senior assisted living community.

91.     Also, while immunity is broad for program planners and many may be eligible to become a program planner, HHS emphasizes that:

> [L]iability immunity is afforded to Covered Persons only for Recommended Activities involving Covered Countermeasures that are related to (1) federal agreements or (2) [a]ctivities *authorized in accordance with the public health and medical response of the Authority Having Jurisdiction* to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency.

AO 20-04, 4, (citing Declaration, 85 Fed. Reg. at 15, 202). This language demonstrates that HHS recognized defendants as a licensed facility (here akin to a federal contractor with "federal agreements") working under its AHJs to fight COVID-19 pursuant to the federal government plan. *Id*. This is one demonstration of HHS's direction and control of defendants through the federal government's state level AHJ partners during the pandemic. 85 Fed. Reg. at 15, (defining and

---

of §1442(a). Subsection (f) also refers to two categories of federal agents to be protected: "instrumentalities" and "officers" of HHS. Subsection (f)'s assurance of statutory protections of federal instrumentalities and officers is expressly incorporated into subsection (d)(1) of the PREP Act: "Subject to subsection (f), the sole exception to immunity from suit…shall be for an exclusive Federal cause of action…" § 247d-6d(d)(1) (emphasis added). By incorporating subsection (f) into subsection (d)(1), Congress makes clear that the creation of the PREP Act cause of action is not abrogating or limiting in any federal protection, such § 1442, that otherwise bestowed upon an instrumentality or officer on the of federal government's agencies. Thus, it is clear Congress anticipated that a public health crisis, such as the COVID-19 pandemic, would involve private federal officers and instrumentalities which would need all protections afforded by federal law, including 28 U.S.C. § 1442(a).

declaring PREP Act "covered" persons to be those licensed entities formally working through HHS's AHJs).

92.     Such direction and control during the limited period of the COVID-19 Declaration clearly illustrates federal surrogacy and substantiates the "acting under" prong of 28 U.S.C. §1442(a).[14]

93.     Moreover, beginning in January 2020, in response to the pandemic and national state of emergency, the CDC began issuing extremely detailed and pervasive directives to healthcare facilities as members of the nation's critical infrastructure and as part of the coordinated national effort to respond to and contain the COVID-19 pandemic.

94.     Throughout the pandemic, the CDC specifically instructed facilities to take or not take particular clinical and operational actions.

95.     For example, in January and February 2020, the CDC issued a number of health updates regarding COVID-19, as well as criteria to guide the evaluation and testing of patients under investigation ("PUI") for COVID-19. Healthcare providers were advised to identify PUI based on clinical features - travel to an affected geographic region and contact with a person confirmed to have tested positive for COVID-19. Persons meeting the PUI criteria were to be tested and healthcare providers were advised to immediately notify their local or state health department in the event they were evaluating a PUI. State health departments in turn were instructed to immediately contact the CDC and complete a PUI case investigation form. Initially, COVID-19 testing was conducted solely through the CDC. The CDC also instructed healthcare

---

[14] *Maglioli*—which is not yet final (*see* footnote 8) and not binding -- misapplied the *Watson* test for federal officer jurisdiction largely out of a fear of creating a "slippery slope". *Maglioli,* 16 F.4th at 406. The Court worried that "clergy, farmers, bus drivers" may be deemed federal officers if it recognized nursing facilities as federal officers. *Id.* However such institutions do not have Letters or Declarations from HHS declaring them to be "program planners," "covered persons," "qualified persons," or "critical partners" in fighting COVID-19 under the PREP Act like defendants in this action.

providers to use standard, contact and airborne precautions when interacting with PUI. (*See* January 8, 2020, CDC Health Update Outbreak of Pneumonia of Unknown Etiology (PUE) in Wuhan China,; January 17, 2020 CDC Interim Infection Prevention and Control Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel Coronavirus (2019-n-coV) in a Healthcare Setting; January 24, 2020 CDC Interim Infection Prevention and Control Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel Coronavirus (2019-n-coV) in a Healthcare Setting.

96.   Defendants' actions and conduct were taken due to unprecedented and "strong government intervention" which went beyond the "mere auspices of federal direction." *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N. D. Cal. 1992).

97.   Through federal directives issued by HHS, CDC and PA DOH, federal authorities were making the operational decisions as it related to the clinical pandemic response in health care facilities, including senior assisted living communities. *This included making decisions with respect to isolation and administering COVID-19 tests to be submitted to government-controlled laboratories.*

98.   *CDC directed facilities when to test patients and healthcare personnel and how to prioritize testing.* CDC also directed facilities on how to isolate patients.

99.   Moreover, other courts have recognized that the designation as "critical infrastructure" during the pandemic as relevant is assessing the requirement that an entity was "acting under" the direction of federal officials for the purposes of removal. *See Wazelle v. Tyson Foods, Inc.*, 2021 WL 2637335 at *5 (N.D. Tex. Jun. 25, 2021); *Fields v. Brown*, 2021 WL 510620 at *3 (E.D. Tex. Feb. 11, 2021); *Johnson v. Tyson Foods, Inc.*, No. 21-CV-01161-STA-JAY, 2021 WL 5107723, at *3 (W.D. Tenn. Nov. 3, 2021) (adopting the reasoning in *Wazelle* and *Fields* in

finding removal appropriate where defendant acted beyond simple compliance with law and helped carry out basic governmental tasks); *Reed v. Tyson Foods, Inc.*, No. 21-CV-01155-STA-JAY, 2021 WL 5107725, at *4 (W.D. Tenn. Nov. 3, 2021) (same).

100.    In short, defendant's response to the COVID-19 outbreak was directed by the federal government.

### C. Plaintiff's allegations arise from actions taken by defendants pursuant to federal directives.

101.    The next requirement, often referred to as the "nexus" or "causation" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Defender Ass'n*, 790 F.3d at 471.

102.    Here, a clear causal nexus exists between plaintiff's claims and the actions taken by defendants in responding to and administering care related to the COVID-19 outbreak. Plaintiff alleges defendants engaged in wrongful conduct in the manner in which they managed their COVID-19 countermeasure program in responding to the global crisis, all of which was done at the direction of HHS, CDC and Pennsylvania DOH. Plaintiff further criticizes defendants' execution of COVID-19 protocols and procedures set in place to prevent the spread of the virus.

103.    At all relevant times, defendants in the present action, in preparation and response to the COVID-19 outbreak, were acting at the specific instruction and oversight of the federal government—specifically the HHS, and CDC—in responding to a federal effort to address the ongoing national state of emergency. Defendants' actions were taken "in an effort to assist, or to help carry out, the duties or tasks" dictated by the CDC in responding to the COVID-19 pandemic. This included acting in accordance with evolving and specific guidelines from CDC with respect to: (1) infection control policies and procedures; (2) COVID-19 testing, administration, and

processing; (3) PPE procurement; (4) PPE allocation; (5) admission and discharge of residents; (6) managing visitors and outside persons; (7) staffing allocation and retention; (8) isolation protocols and management, among multiple additional directives. Thus, a nexus plainly exists between defendants' actions under color of federal office and plaintiff's claims.

### D.  Defendants have raised a colorable defense based upon federal law.

104.     Defendants meet the last requirement insofar as defendants assert a colorable federal defense including, among others, their immunity and federal preemption under the PREP Act. For the purposes of removal, the defense must merely be "colorable" and need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense may be tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

105.     As previously set forth, defendants assert that they are immune from liability in this matter under the PREP Act as they are "covered persons" as contemplated by 42 U.S.C. § 247d–6d and the claims against them are preempted under the Act. (*See* pp. 16-24). In addition, defendants assert that plaintiff has failed to exhaust his federal pre-litigation administrative remedies under the PREP Act.

### III.     FEDERAL QUESTION JURISDICTION FURTHER EXISTS UNDER THE *GRABLE* DOCTRINE

106.     Advisory Opinion 21-01 issued by HHS and the Secretary's Fourth Declaration also support the view warranting federal jurisdiction under the embedded federal issue doctrine. Under this doctrine, state law claims can give rise to federal jurisdiction when they "implicate significant federal issues." *Grable*, 545 U.S. at 312.

107.     The embedded federal issue doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on

substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

108.    A federal forum is also important when substantial federal question[s] of great federal interest are presented, even when raised by a complaint framed in terms of state law, provided that resolution of the federal question is necessary to the resolution of the state-law claim." 1 Moore's Manual--*Federal Practice & Procedure* §5.10 (2020).

> An issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases. In other words, a case is more likely to be important to the federal system as a whole if it presents "a nearly 'pure issue of law … that could be settled once and for all'" rather than an issue that is "fact-bound and situation-specific" and whose holding will more likely be limited to the facts of the case.

*Municipality of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013).

109.    Thus, embedded federal jurisdiction may exist where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313-14).

110.    In the context of the COVID-19 pandemic, which has affected every state in the country, the present case raises substantial questions concerning the application of various provisions of the PREP Act, including the broad immunity provision and the interpretation of the exception for claims involving willful misconduct, as the Secretary explicitly recognized in the Fourth Declaration:

> COVID-19 is a global challenge that requires a whole-of-nation response. There are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of

34

> *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545
> U.S. 308 (2005), in having a unified, whole-of-nation response to
> the COVID-19 pandemic among federal, state, local, and private-
> sector entities. The world is facing an unprecedented pandemic. To
> effectively respond, there must be a more consistent pathway for
> Covered Persons to manufacture, distribute, administer or use
> Covered Countermeasures across the nation and the world. Thus,
> there are substantial federal legal and policy issues, and substantial
> federal legal and policy interests within the meaning of *Grable &
> Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308
> (2005), in having a uniform interpretation of the PREP Act.

85 Fed. Reg. at 79197.

111.   The Declaration interprets the PREP Act as expressing Congress' intent for an

exclusive federal forum and notes that through the PREP Act, Congress delegated to the Secretary

"the authority to strike the appropriate Federal-state balance with respect to particular Covered

Countermeasures through PREP Act declarations." *Id.* at 79198. The *Grable* doctrine and PREP

Act are, therefore, directly applicable to plaintiff's claims and support this Court's jurisdiction.

112.   Further, AO 21-01 holds that "ordaining the metes and bounds of PREP Act

protection in the context of a national health emergency necessarily means the case belongs in

federal court." This interpretation is consistent with the Supreme Court's long-standing rule "that

in certain cases federal question jurisdiction will lie over state-law claims that implicate federal

issues." *Grable* at 312.

113.   Here, defendants have met the requirements warranting federal jurisdiction. First,

plaintiff brings claims arising from the alleged use or administration of covered countermeasures

in connection with the care and treatment provided to decedent. This necessarily raises an actual

disputed issue which is critical to the outcome of this case. Furthermore, the Advisory Opinion

confirms the express intention to have federal courts supersede and preempt state jurisdiction with

respect to the issues raised by plaintiff. Here, because the application of the PREP Act turns on

first impression issues of substantial and unresolved questions of federal law regarding federal

preemption and federal immunity, the claims trigger federal subject matter jurisdiction, consistent with the principles in *Grable*. As such, these issues must be resolved in the federal court system.

WHEREFORE, defendants, Watermark Communities, LLC f/k/a Watermark Retirement Communities, Inc., Watermark Operator, LLC d/b/a Rose Tree Place, Cynthia Evans and Karen Mlawsky, hereby notify plaintiff that the above-entitled action, formerly pending in the Court of Common Pleas, Philadelphia County, Pennsylvania, has been removed from that state court to this Federal Court. Should any question arise as to the propriety of this removal, defendants respectfully request an opportunity to provide further briefing and oral argument.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH, LLP

By:  /s/ *Lawrence D. Jackson*
Lawrence D. Jackson, Esq.
PA Attorney ID: 56140

*Attorneys for Defendants, Watermark Communities, LLC f/k/a Watermark Retirement Communities, Inc., Watermark Operator, LLC d/b/a Rose Tree Place, Cynthia Evans and Karen Mlawsky*

Date:  January 10, 2022

## **CERTIFICATE OF SERVICE**

I, Lawrence D. Jackson, Esquire, hereby certify that, on this date, I caused to be served the

foregoing Notice of Removal via email and First Class Mail, postage pre-paid, upon the

following:

> Gerald B. Baldino, Jr. Esquire
> Sacchetta & Baldino
> 308 East Second Street
> Media, PA  19063

> */s/ Lawrence D. Jackson*
> Lawrence D. Jackson, Esquire

DATED:  January 10, 2022

# EXHIBIT A



**SACCHETTA & BALDINO**

T R I A L   L A W Y E R S

Thomas F. Sacchetta*†‡¶
Gerald B. Baldino, Jr.*¶
Bruce H. MacKnight, Jr.†¶
Joseph P. Briglia▲¶
Tyler Sacchetta§
Gerald B. Baldino, III¶
*Member of PA & NJ Bars
§Member of PA, NJ & DE Bars

308 East Second Street
Media, PA 19063
Telephone: 610-891-9212
Fax: 610-891-7190

24 South Broad Street
Woodbury, NJ 08096
Telephone: 856-845-4400
Fax: 856-845-0400

1201 North Orange Street
Suite 7543
Wilmington, DE 19801
Telephone: 302-884-6715
Fax: 302-573-2507

*Please Reply to Media Office*

December 15, 2021

**<u>Via Certified Mail-Return Receipt Requested</u>**
**<u>No.9489 0090 0027 6346 0444 52</u>**
Karen Mlawsky
2020 West Rudasill Road
Tucson AZ 85704

Re:   Frank Troilo vs. Rose Tree Place, et al
Our File No. 20-8367

Dear Sir/Madam:

Enclosed please find a Complaint with regard to the above-referenced matter.

Very truly yours,

*/s/ Gerald B. Baldino, Jr.*

Gerald B. Baldino, Jr.

GBB/glm
Enclosures

*Board Certified as a Civil Trial Advocate by the National Board of Trial Advocacy*

†*Certified as a specialist in the practice of workers' compensation law by the Pennsylvania Bar Association Section on Workers' Compensation Law as authorized by the Pennsylvania Supreme Court*

‡*Certified Civil Trial Attorney, Supreme Court of New Jersey*

▲*Of Counsel to the Firm*

W W W . S B A T T O R N E Y . C O M

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **DECEMBER 2021** | **000073** |
| E-Filing Number: 2112009730 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| FRANK TROILO | ROSE TREE PLACE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 95 TRENT ROAD<br>TURNERSVILLE NJ 08012 | 500 SANDY BANK ROAD<br>MEDIA PA 19063 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | NSL ROSE TREE PLACE, LLC, ALIAS: ROSE TREE PLACE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 251 LITTLE FALLS DRIVE<br>WILMINGTON DE 19808 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | WATERMARK RETIREMENT COMMUNITIES, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 3411 SILVERSIDE ROAD STE 104<br>WILMINGTON DE 19810 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | |
|---|---|---|---|
| 1 | 7 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**

XA - NURSING HOME LITIGATION

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY**<br><br>DEC **06** 2021<br><br>**S. RICE** | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>FRANK TROILO</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| GERALD B. BALDINO | 308 E. SECOND STREET<br>MEDIA PA 19063 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (610)891-9212 | (610)891-7190 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 55624 | jerry@sbattorney.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *GERALD BALDINO* | Monday, December 06, 2021, 02:33 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. ROSE TREE PLACE
   500 SANDY BANK ROAD
   MEDIA PA 19063
2. NSL ROSE TREE PLACE, LLC
   ALIAS: ROSE TREE PLACE
   251 LITTLE FALLS DRIVE
   WILMINGTON DE 19808
3. WATERMARK RETIREMENT COMMUNITIES, INC.
   3411 SILVERSIDE ROAD STE 104
   WILMINGTON DE 19810
4. WATERMARK RETIREMENT COMMUNITIES, LLC
   3411 SILVERSIDE ROAD STE 104
   WILMINGTON DE 19810
5. WATERMARK OPERATOR, LLC
   3411 SILVERSIDE ROAD STE 104
   WILMINGTON DE 19810
6. CYNTHIA EVANS
   500 SANDY BANK ROAD
   MEDIA PA 19063
7. KAREN MLAWSKY
   2020 WEST RUDASILL ROAD
   TUCSON AZ 85704

Filed and Attested by the
Office of Judicial Records
10 DEC 2021 02:33 pm
L. B. RICE

| | | |
|---|---|---|
| ESTATE OF CLARA T. TROILO, deceased, | : | COURT OF COMMON PLEAS |
| by FRANK TROILO, Executor of the | : | PHILADELPHIA COUNTY |
| ESTATE OF CLARA T. TROILO, | : | CIVIL ACTION – LAW |
| 95 Trent Road | : | |
| Turnersville, NJ 08012 | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ROSE TREE PLACE | : | |
| 500 Sandy Bank Road | : | |
| Media, PA 19063 | : | |
| and | : | |
| NSL ROSE TREE PLACE, LLC d/b/a | : | |
| ROSE TREE PLACE | : | Major Jury Trial |
| 251 Little Falls Drive | : | |
| Wilmington, DE 19808 | : | |
| and | : | |
| WATERMARK RETIREMENT | : | |
| COMMUNITIES, INC. | : | |
| 3411 Silverside Road, Ste. 104 | : | |
| Wilmington, DE 19810 | : | |
| and | : | |
| WATERMARK RETIREMENT | : | |
| COMMUNITIES, LLC | : | |
| 3411 Silverside Road, Ste. 104 | : | |
| Wilmington, DE 19810 | : | |
| and | : | |
| WATERMARK OPERATOR, LLC | : | |
| 3411 Silverside Road, Ste. 104 | : | |
| Wilmington, DE 19810 | : | |
| And | : | |
| CYNTHIA EVANS | : | |
| 500 Sandy Bank Road | : | |
| Media, PA 19063 | : | |
| and | : | |
| KAREN MLAWSKY | : | |
| 2020 West Rudasill Road | : | |
| Tucson, AZ 85704 | : | |
| Defendants. | : | |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be

entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia County Bar Association
Lawyers Referral and Information Service
1 Reading Center, Philadelphia, PA 19107
[215] 238-1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas on las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda la notificacion. Hace falta asentar una compareencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Lega
One Reading Center
Filadelfia,Pennsylvania 19107
Telef.: [215] 238-1701

Case ID: 211200073

SACCHETTA & BALDINO
BY: GERALD B. BALDINO, JR., ESQUIRE
I.D. No. 55624
GERALD B. BALDINO, III, ESQUIRE
I.D. No. 326111
308 East Second Street
Media, PA 19063
(610)891-9212

Attorneys for Plaintiff
Jury Trial Demanded

| | | |
|---|---|---|
| ESTATE OF CLARA T. TROILO, deceased, | : | COURT OF COMMON PLEAS |
| by FRANK TROILO, Executor of the | : | PHILADELPHIA COUNTY, PA |
| ESTATE OF CLARA T. TROILO, | : | CIVIL ACTION – LAW |
| 95 Trent Road | : | |
| Turnersville, NJ 08012 | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ROSE TREE PLACE | : | |
| 500 Sandy Bank Road | : | |
| Media, PA 19063 | : | |
| and | : | |
| NSL ROSE TREE PLACE, LLC d/b/a | : | |
| ROSE TREE PLACE | : | Major Jury Trial |
| 251 Little Falls Drive | : | |
| Wilmington, DE 19808 | : | |
| and | : | |
| WATERMARK RETIREMENT | : | |
| COMMUNITIES, INC. | : | |
| 3411 Silverside Road, Ste. 104 | : | |
| Wilmington, DE 19810 | : | |
| and | : | |
| WATERMARK RETIREMENT | : | |
| COMMUNITIES, LLC | : | |
| 3411 Silverside Road, Ste. 104 | : | |
| Wilmington, DE 19810 | : | |
| and | : | |
| WATERMARK OPERATOR, LLC | : | |
| 3411 Silverside Road, Ste. 104 | : | |
| Wilmington, DE 19810 | : | |
| And | : | |
| CYNTHIA EVANS | : | |
| 500 Sandy Bank Road | : | |
| Media, PA 19063 | : | |
| and | : | |

KAREN MLAWSKY                          :
2020 West Rudasill Road                :
Tucson, AZ 85704                       :
                    Defendants.        :

## COMPLAINT

1.      This is a wrongful death action against all defendants arising from the care rendered to Plaintiff's decedent, as well as the fraudulent statements made by Defendants herein.

2.      Plaintiff Frank Troilo is an adult individual residing at 95 Trent Road, Turnersville, New Jersey 08012 and is the Court appointed Executor of the Estate of Clara T. Troilo, deceased, pursuant to Letters issued by the State of New Jersey Gloucester County Surrogate's Court under Docket Number 20-00902.

3.      Defendant, Rose Tree Place, regularly conducts business in the Commonwealth of Pennsylvania at 500 Sandy Bank Road, Media, Delaware County Pennsylvania 19063.

4.      Defendant, Rose Tree Place, is engaged in the business of owning and/or operating and/or managing continuing care retirement communities, personal care homes, assisted living facilities, rehabilitation facilities and/or nursing homes, including Rose Tree Place, a skilled nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, Pennsylvania, and, was at all relevant times, duly licensed to operate same within the Commonwealth of Pennsylvania.

5.      Defendant, NSL Rose Tree Place, LLC, d/b/a Rose Tree Place is, upon information and belief, a business entity licensed to and doing business in the Commonwealth of Pennsylvania with a registered business address of 251 Little Falls Drive, Wilmington, DE 19808.

6.      Defendant, NSL Rose Tree Place, LLC, d/b/a Rose Tree Place, is engaged in the business of owning and/or operating and/or managing continuing care retirement communities, personal care homes, assisted living facilities, rehabilitation facilities and/or nursing homes,

including Rose Tree Place, a skilled nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, Pennsylvania, and, was at all relevant times, duly licensed to operate same within the Commonwealth of Pennsylvania.

7.      Defendant, Watermark Retirement Communities, Inc., upon information and belief, a business entity licensed to and doing business in the Commonwealth of Pennsylvania with a registered business address of 3411 Silverside Road, Ste. 104, Wilmington, DE 19810.

8.      Defendant, Watermark Retirement Communities, Inc., is engaged in the business of owning and/or operating and/or managing continuing care retirement communities, personal care homes, assisted living facilities, rehabilitation facilities and/or nursing homes, including Rose Tree Place, a skilled nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, Pennsylvania, and, was at all relevant times, duly licensed to operate same within the Commonwealth of Pennsylvania. Defendant Watermark Retirement Communities, Inc., regularly conducts business in Pennsylvania and in the City and County of Philadelphia, for example at The Waterfront at Logan Square senior living center and nursing facility, located at Two Franklin Town Boulevard, Philadelphia, PA 19103.

9.      Defendant, Watermark Retirement Communities, LLC, upon information and belief, a business entity licensed to and doing business in the Commonwealth of Pennsylvania with a registered business address of 3411 Silverside Road, Ste. 104, Wilmington, DE 19810.

10.     Defendant, Watermark Retirement Communities, LLC, is engaged in the business of owning and/or operating and/or managing continuing care retirement communities, personal care homes, assisted living facilities, rehabilitation facilities and/or nursing homes, including Rose

Case ID: 211200073

Tree Place, a skilled nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, Pennsylvania, and, was at all relevant times, duly licensed to operate same within the Commonwealth of Pennsylvania. Defendant Watermark Retirement Communities, LLC, regularly conducts business in Pennsylvania and in the City and County of Philadelphia, for example at The Waterfront at Logan Square senior living center and nursing facility, located at Two Franklin Town Boulevard, Philadelphia, PA 19103.

11.    Defendant, Watermark Operator, LLC, upon information and belief, a business entity licensed to and doing business in the Commonwealth of Pennsylvania with a registered business address of 3411 Silverside Road, Ste. 104, Wilmington, DE 19810.

12.    Defendant, Watermark Operator, LLC, is engaged in the business of owning and/or operating and/or managing continuing care retirement communities, personal care homes, assisted living facilities, rehabilitation facilities and/or nursing homes, including Rose Tree Place, a skilled nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, Pennsylvania, and, was at all relevant times, duly licensed to operate same within the Commonwealth of Pennsylvania. Defendant Watermark Retirement Communities, LLC, regularly conducts business in Pennsylvania and in the City and County of Philadelphia, for example at The Waterfront at Logan Square senior living center and nursing facility, located at Two Franklin Town Boulevard, Philadelphia, PA 19103.

13.    Defendant, Cynthia Evans, is an adult individual and citizen of the Commonwealth of Pennsylvania residing in Pennsylvania, with a business address at 500 Sandy Bank Road, Media, Delaware County Pennsylvania 19063 and, upon information and belief, was at all times relevant hereto employed as the Executive Director of Rose Tree Place.

14.     Defendant, Karen Mlawsky, is an adult individual with a business address at 2020 West Rudasill Road, Tucson, Arizona 85704 and, upon information and belief, was at all times relevant hereto employed as the Chief Operating officer for Watermark Retirement Communities.

15.     The injuries and harm suffered by Plaintiff's Decedent were caused by the negligence, intentional acts, and fraudulent statements and misrepresentations of defendants, jointly and severally, and were in no manner caused by the actions of decedent as a result of her failure to act.

16.     On or about March 4, 2019, Clara Troilo, decedent, became a resident of Rose Tree Place, an assisted living community located at 500 Sandy Bank Road, Media, Delaware County, Pennsylvania, 19063, after entering into a Residency Agreement whereby Decedent was to become a resident of the Rose Tree Place community in exchange for payment of her Residency Fees.

17.     At all times relevant hereto, Decedent made all necessary payments as required under the Residency Agreement

18.     Rose Tree Place advertises itself as a retirement community offering personal and memory care on a large senior campus, including 24-hour access to caring, trained staff, senior wellness programs, and personalized care and assistance.

19.     Upon information and belief, Rose Tree markets the safety, security, highly trained staff and 24-hour personalized care offerings of its facilities in order to induce potential customers, such as Clara Troilo and her family, to choose Rose Tree over other assisted living or nursing home options.

20.     Upon information and belief, Rose Tree Place intends for potential residents and their families, including Clara Troilo and her family, to rely upon such statements in making the decision to live at Rose Tree Place.

21.     During her residency, Decedent Clara Troilo relied upon the superior knowledge, treatment, advice and safety procedures, protocols, and policies of defendants.

22.     During the course of her residency, until on or about March 7, 2020, Decedent Clara Troilo was regularly visited by family members, including but not limited to Frank Troilo, who was granted Power of Attorney over Decedent, Barbara and Robert Virga, and Joan Loiacono, who regularly monitored her condition, appearance, and treatment.

23.     On or about March 7, 2020, while a resident at Rose Tree Place, Plaintiff decedent and all other residents of Rose Tree Place were placed under isolation as a result of the COVID-19 pandemic, and visitors, including resident's family members, were no longer permitted to visit Rose Tree Place.

24.     As a result, Decedent's family members, including but not limited to Frank Troilo, Barbara and Robert Virga, and Joan Loiacono, were no longer able to visit or see Decedent and were only able to communicate with Plaintiff's decedent by way of phone.

25.     During this time Decedent and Decedent's family, including Frank Troilo who held Power of Attorney, were reliant upon e-mail updates and alerts from Defendants involving COVID protocols, policies, procedures, safety measures, as well as the presence of COVID in the facility, and positive COVID findings.

26.     On or about March 10, 2020, Defendants began emailing alerts and updates to residents, families, and friends regarding COVID-19, precautions being taken, changes in resident care programs and to visitations periods, as well as changes to other resident services.

27.     Defendants also notified, residents, family and friends about the creation of a COVID-19 Task Force, intended to "receive and share up to date information" to ensure precautions continue to provide an umbrella of safety for residents.

28.     Unfortunately, Defendants utterly failed to make residents and their families, including Clara Troilo and her family, aware of positive COVID cases in Rose Tree Place

29.     Rather, Defendants continuing communications, alerts, updates, and emails thereafter, including but not limited to email communications by Defendants Evans and Mlawsky, contained material, false, deceptive, fraudulent, and deceitful statements intended to induce residents and their families and loved ones into a false sense of security and to conceal, hide, mask, and cover-up the deadly presence of COVID-19 in the facility,

30.     Upon information and belief, on or multiple occasions through March and April 2020, Defendants notified residents, families, and friends about service and policy changes and COVID-19 issues, yet failed to note, discuss, or advise residents, families, and their loved ones about the presence of COVID-19 or of any residents or staff testing positive for COVID-19 in the Rose Tree Place facilities.

31.     By way of example, on April 9, 2020, Defendants, including Defendant Mlawsky, sent out a Special COVID-19 update, wherein they informed residents family members and others that "[a]t this time we are grateful to report that we have received no positive test results for any resident or associate."

32.     Such statements were materially false, fraudulent, and misleading, as, upon information and belief, Defendants were aware of positive COVID-19 tests among residents of the Rose Tree Place since as early as February of 2020 yet failed to notify residents of the Rose Tree Place, their families, and loved ones of any positive tests until April 22, 2020, when Defendants for the first-time notified residents and others about a resident testing positive for COVID-19.

33.     The material, false, deceptive, fraudulent, and deceitful statements occurred despite statements by Defendants, including by Karen Mlawsky, the Chief Operating Officer of

Watermark Retirement Communities, that "[w]hen a community has a first confirmed positive test for a resident or an associate, we will send a special email to alert everyone of new protocols which will stay in place until further notice."

34.     Upon information and belief, despite multiple positive tests among residents and staff, Defendants at all times relevant hereto failed to advise Plaintiff's decedent, her family, and others of those positive tests, depriving them of the ability to make informed decisions regarding the living situation and care of Clara Troilo.

35.     Clara Troilo, individually and/or through her Power of Attorney, and her family relied upon these fraudulent statements and material misrepresentations regarding the alleged lack of COVID-19 cases in choosing to allow Plaintiff's decedent to remain at the Rose Tree Place.

36.     As a result of Defendants' material, false, deceptive, fraudulent, and deceitful statements, updates, and alerts, Clara Troilo was allowed to remain under the care of Defendants until April 23, 2020.

37.     On or about April 23, 2020, Plaintiff's decedent was transferred to Riddle Memorial Hospital by way of ambulance with symptoms including difficulty breathing, fever, low blood pressure, confusion, leukocytosis, and evidence of sepsis.

38.     Plaintiff decedent was thereafter diagnosed with COVID-19, and her condition continued to decline until her death on April 29, 2020.

39.     On or about April 30, 2020, Defendants, through a communication sent by Rose Tree Place Executive Director Cynthia Evans, notified Residents and other that "Watermark is committed to our open and transparent communication with you and we understand this information is vital to you and your loved ones. Since February, 12 residents have tested positive in our community, all of whom were immediately isolated and/or receiving care in the hospital."

Case ID: 211200073

40.     The April 30, 2020 communication directly contradicts Defendants previous communications, including but not limited to the aforementioned April 9, 2020 Special COVID-19 update wherein they informing residents, family members and others that there were no positive test results for any resident or associate at Rose Tree Place.

41.     The death of Clara Troilo directly and proximately resulted from the material, false, deceptive, fraudulent, and deceitful statements and misrepresentations of defendants, either individually or by and through the actions or inactions of their servants, agents, workmen or employees, as more fully set forth below, which induced Decedent and her family into a false sense of security regarding the standard of care Plaintiff decedent was receiving and deprived of them of the ability to make proper and informed decisions regarding the care of decedent.

42.     As a result of the material, false, deceptive, fraudulent, and deceitful statements and misrepresentations of defendants, individually and by and through their agents, servants, workmen or employees, plaintiff decedent suffered serious injury and death for which defendants are jointly and severally liable.

## COUNT I - FRAUD

### Plaintiff, Estate of Clara T. Troilo, deceased, by Frank Troilo, Executor of the Estate of Clara T. Troilo v. All Defendants

43.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

44.     The elements of fraud are (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

45.     Defendants, through their website, advertisements, verbal promises, and communications with Plaintiff's decedent and her family, made numerous false, misleading and material misrepresentations regarding the level of care, supervision, and safety of Plaintiff's decedent with regard to the handling of COVID-19 within the Rose Tree Place, including with regard to residents, staff, employees, agents, servants, and workmen testing positive for COVID-19.

46.     These representations include, but are not limited to:

a.     Statements on Defendants' website that tout 24-hour access to caring, trained staff, senior wellness programs, and personalized care and assistance;

b.     Statements by Defendants that they would send a special email alert to alert residents, their families, and others when a community has a first confirmed positive test for a resident or an associate;

c.     Statements by Defendants that as of April 9, 2020, Defendants were "grateful to report that we have received no positive test results for any resident or associate."

d.     Statements by Defendants from March 2020 through April 22, 2020 knowingly intentionally and recklessly omitting any reference to positive COVID-19 tests in any residents or staff of the Rose Tree Place.

47.     All of the above statements were made for the purpose of inducing Ms. Troilo, individually and through her Power of Attorney, and her family to select Rose Tree Place as a care facility, to stay at Rose Tree Place despite their knowledge of the presence and danger of COVID-19 within the care facility, and to pay additional sums of money to Defendants.

48.     Ms. Troilo, individually and through her Power of Attorney, and her family relied upon these statements in purchasing Rose Tree Place services and accommodations and remaining at Rose Tree Place despite the growing issues of COVID-19.

49.     As a direct and proximate result of Plaintiff decedent's reliance on these false statements, she suffered considerable harm including but not limited to the following:

    a.     Severe pain and suffering;

    b.     Aggravation;

    c.     Inconvenience;

    d.     Anxiety;

    e.     Loss of pleasures of life;

    f.     Loss of functions of the lungs and deterioration of physical condition;

    g.     Otherwise avoidable and unnecessary medical, rehabilitative, diagnostic and therapeutic expenses;

    h.     Necessity to undergo otherwise avoidable medical treatments and therapies;

    i.     Monetary losses;

    j.     Loss of dignity;

    k.     Death; and

    l.     Fear of impending death.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) in an amount in excess of the compulsory arbitration limit of this Court exclusive of pre and post judgment interest.

## COUNT II- NEGLIGENT MISREPRESENTATION

Case ID: 211200073

**Plaintiff, Estate of Clara T. Troilo, deceased, by Frank Troilo, Executor**
**of the Estate of Clara T. Troilo v. All Defendants**

50.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as
though fully set forth herein.

51.     The elements of a common law claim for negligent misrepresentation are: fraud are
"(1) a misrepresentation of a material fact; (2) made under circumstances in which the
misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it;
and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

52.     Defendants, through their website, advertisements, verbal promises, and
communications with Plaintiff's decedent and her family, made numerous misrepresentations of
material facts regarding the level of care, supervision, and safety of Plaintiff's decedent as well as
the handling of COVID-19 within the Rose Tree Place, including with regard to residents, staff,
employees, agents, servants, and workmen testing positive for COVID-19.

53.     These misrepresentations include, but are not limited to:

a.     Statements on Defendants' website that tout 24-hour access to caring,
trained staff, senior wellness programs, and personalized care and assistance;

b.     Statements by Defendants that they would send a special email alert to alert
residents, their families, and others when a community has a first confirmed positive test for a
resident or an associate;

c.     Statements by Defendants that as of April 9, 2020, Defendants were
"grateful to report that we have received no positive test results for any resident or associate."

d.     Statements by Defendants from March 2020 through April 22, 2020
knowingly or recklessly omitting any reference to positive COVID-19 tests in any residents or
staff of the Rose Tree Place.

Case ID: 211200073

54.     All of the above statements were made for the purpose of inducing Ms. Troilo, individually and through her Power of Attorney, and her family to select Rose Tree Place as a care facility, to stay at Rose Tree Place despite the presence and danger of COVID-19 within the care facility, and to pay additional sums of money to Defendants, despite the fact that Defendants ought to have known the representations were false.

55.     Ms. Troilo, individually and through her Power of Attorney, and her family justifiably relied upon these statements in purchasing Rose Tree Place services and accommodations and remaining at Rose Tree Place despite the growing issues of COVID-19.

56.     As a direct and proximate result of Plaintiff decedent's reliance on these reckless and false statements, she suffered considerable harm including but not limited to the following:

      a.     Severe pain and suffering;

      b.     Aggravation;

      c.     Inconvenience;

      d.     Anxiety;

      e.     Loss of pleasures of life;

      f.     Loss of functions of the lungs and deterioration of physical condition;

      g.     Otherwise avoidable and unnecessary medical, rehabilitative, diagnostic and therapeutic expenses;

      h.     Necessity to undergo otherwise avoidable medical treatments and therapies;

      i.     Monetary losses;

      j.     Loss of dignity;

      k.     Death; and

      l.     Fear of impending death.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive in an amount in excess of Fifty Thousand Dollars ($50,000.00) in an amount in excess of the compulsory arbitration limit of this Court exclusive of pre and post judgment interest.

### COUNT III – WRONGFUL DEATH

#### Plaintiff, Estate of Clara T. Troilo, deceased, by Frank Troilo, Executor of the Estate of Clara T. Troilo v. All Defendants

57.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

58.     Plaintiff is the Executor of the Estate of Clara T. Troilo, deceased, and brings this action by virtue of 42 Pa. C.S. §8031 and Pa. R.C.P. 2202 and claims all benefits and damages recoverable under the provision of that statute on behalf of herself and all other persons entitled to recover under law.

59.     Those individuals known to plaintiff who may be entitled to recover under law for the wrongful death of decedent are Frank R. Troilo, Barbara Virga, and Joan Loiacono, all of whom have been or will be given notice of this action.

60.     By reason of the death of Clara Troilo, her Executor and those surviving her suffered great pecuniary losses as well as funeral expenses and expense of administrator as stated by reason of the injury and harm which caused her death.

61.     Prior to her death, because of the misrepresentations and acts and omissions of defendants acting individually and/or by and through their agents, servants, workmen or employees, plaintiff's decedent suffered damages and harm recoverable under the Pennsylvania Wrongful Death Statute, all of which are sought hereby.

62.     Plaintiff's decedent, Clara Troilo, did not bring an action against defendants or any of them during her lifetime for injuries she sustained by reason of defendants' conduct aforementioned.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in an amount in excess of the compulsory arbitration limit of this Court exclusive of pre and post judgment interest.

## COUNT IV – SURVIVAL ACTION

### Plaintiff v. All Defendants

63.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

64.     Plaintiff brings this action on behalf of the Estate of Clara T. Troilo, deceased, under 42 Pa C.S. §8302 and 20 Pa. C.S. §3371 and claims all benefits of the Survival Act on behalf of herself and all other persons entitled to recover under the law.

65.     On behalf of the Estate of Clara T. Troilo, plaintiff claims all damages suffered by the Estate by reason of decedent's death, including but not limited to anxiety, fear, pain, suffering, conscious awareness, impending death, aggravation, inconvenience, monetary losses, medical expenses sustained by decedent prior to her death including any and all other damages recoverable under the Pennsylvania Survival Statute.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in an amount in excess of the compulsory arbitration limit of this Court exclusive of pre and post judgment interest.

## COUNT V – VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICEIS AND CONSUMER PROTECTION LAW (PUTPCPL)

### Plaintiff v. All Defendants

Case ID: 211200073

66.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

67.     Defendants made, caused to be made, or ratified the misrepresentation and nondisclosure of the material acts described above and incorporated herein by this reference.

68.     These Defendants made these misrepresentations and nondisclosures of material fact reasonably expecting that Plaintiff's decedent and her family would act in reliance upon the misrepresentations or nondisclosures, or would refrain from acting.

69.     The Plaintiff's decedent and her family reasonably relied upon these misrepresentations and nondisclosures to their detriment.

70.     Upon information and belief, these representations were contained in (and nondisclosures were omitted from) brochures, verbal representations, conduct, signage, emails and contracts, all or some of which were widely distributed to the public, including Plaintiff's decedent, individually and through her Power of Attorney, and her family, and which were approved by these Defendants.

71.     These representations and/or concealments constitute violations of PUTPCPL.

72.     These Defendants are liable to the Plaintiffs under the PUTPCPL because:

a.      These Defendants engaged in an unfair or deceptive trade practice as defined by the PCPA;

b.      The challenged practice occurred in the course of these Defendants' business, vocation, or occupation;

c.      the challenged practice significantly impacts the public as actual or potential consumers of these Defendants' services;

       d.      many actual and potential purchasers of Defendants' assisted living and nursing home services were exposed to and impacted by the challenged practice through brochures, verbal representations, conduct, signage, emails and other communication efforts and conduct by or at the direction of these Defendants, as well as the Plaintiffs who ultimately must bear the economic burden of the harm caused by the practices;

       e.      the making of these representations and nondisclosures by these Defendants was bad faith conduct because the conduct was fraudulent, willful, knowing, and/or intentional, and such conduct caused injury to the Plaintiff; and

       f.      the Plaintiff suffered injury in fact to a legally protected interest due to the practice.

73.     As a direct and proximate result of the aforementioned conduct, significant damage to the Plaintiff resulted including but not limited to the following:

       a.      Severe pain and suffering;

       b.      Aggravation;

       c.      Inconvenience;

       d.      Anxiety;

       e.      Loss of pleasures of life;

       f.      Loss of functions of the lungs and deuteriation of physical condition;

       g.      Otherwise avoidable and unnecessary medical, rehabilitative, diagnostic and therapeutic expenses;

       h.      Necessity to undergo otherwise avoidable medical treatments and therapies;

       i.      Monetary losses;

       j.      Loss of dignity;

Case ID: 211200073

k.    Death; and

l.    Fear of impending death.

74.    The Plaintiff is entitled to, and hereby demands, as additional damages three times the amount of its actual damages, plus costs and attorney fees, pursuant to 73 P.S. § 201-9.2, and Defendants are strictly liable.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in an amount in excess of the compulsory arbitration limit of this Court exclusive of pre and post judgment interest.

## COUNT VI – BREACH OF CONTRACT

**Plaintiff v. Rose Tree Place; NSL Rose Tree Place, LLC, d/b/a Rose Tree Place; Watermark Retirement Communities, Inc.; Watermark Retirement Communities, LLC; and Watermark Operator, LLC**

75.    Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

76.    Plaintiff Decedent entered into a Residency Agreement with Defendants in which Plaintiff Decedent agreed to pay certain fees in exchange for the ability to reside at The Rose Tree Place and receive certain services and accommodations.

77.    Plaintiff Decedent performed all of the conditions of the agreement that were required of her.

78.    Defendants breached the agreement in numerous ways:

a.    Failing to provide safe accommodations;

b.    Failing to provide certain care services;

c.    Failing to properly maintain Community facilities; and

      d.     Failing to apprise Decedent of, or otherwise provide proper notice of, the presence of COVID-19 within Rose Tree Place.

      79.     Plaintiff Decedent was harmed in a number of ways by her reliance on the terms of the agreement that Defendants refused to uphold, in particular by failing to provide safe and appropriate services, facilities, and accommodations.

      80.     As a direct and proximate result of the aforementioned conduct, significant damage to the Plaintiff resulted including but not limited to the following:

      a.     Severe pain and suffering;

      b.     Aggravation;

      c.     Inconvenience;

      d.     Anxiety;

      e.     Loss of pleasures of life;

      f.     Loss of functions of the lungs and deuteriation of physical condition;

      g.     Otherwise avoidable and unnecessary medical, rehabilitative, diagnostic and therapeutic expenses;

      h.     Necessity to undergo otherwise avoidable medical treatments and therapies;

      i.     Monetary losses;

      j.     Loss of dignity;

      k.     Death; and

      l.     Fear of impending death.

      WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in an amount in excess of the compulsory arbitration limit of this Court exclusive of pre and post judgment interest.

SACCHETTA & BALDINO


*/s/ Gerald B. Baldino, Jr.*
Gerald B.  Baldino, Jr., Esquire
Attorney for Plaintiff

Dated:  December 6, 2021

Case ID: 211200073

**VERIFICATION**

I, Frank Troilo, Executor of the Estate of Clara T. Troilo, deceased, hereby verify that I

am the plaintiff named in the Complaint in this matter and that the facts set forth in the

Complaint are true and correct to the best of my knowledge, information and belief. I further

understand that statements made therein are subject to the penalties of 18 Pa. C.S. Section 4904

relating to unsworn falsification to authorities.

Date: 11/8/2021

Frank Troilo
Executor of the Estate of Clara T. Troilo, Deceased

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **DEBBIE ANN BOLTON, surviving child of Decedent, Ruth Clara Summers,** | |
| *Plaintiff,* | |
| *v.* | **Civil Action No. 3:20-cv-00683** |
| **GALLATIN CENTER FOR REHABILITATION & HEALING, LLC,** | **CHIEF JUDGE CRENSHAW MAGISTRATE JUDGE HOLMES** |
| *Defendant.* | |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to address the preemptive effect of the Public Readiness and Emergency Preparedness Act (the "PREP Act" or "Act") , 42 U.S.C.A. §§ 247d-6d, 247d-6e (West 2020), should this Court find it applicable in this case.

COVID-19 presents an unprecedented global challenge, requiring a whole-of-nation response. To encourage the efficient development and deployment of medical countermeasures during such emergencies, in the PREP Act, Congress limited liability for losses related to the administration or use of countermeasures, like diagnostics and treatments, that are specified by the Secretary of Health and Human Services by declaration.

As explained below, the PREP Act completely preempts claims relating to the administration or use of covered countermeasures with respect to a public health emergency, as declared by the Secretary. Therefore, cases that include such claims necessarily include federal questions and, therefore, are removable. The United States is not a party to this litigation and takes no position as to whether the Act applies to any particular claim alleged in Plaintiff's Complaint in this case.

However, the United States has an interest in having the PREP Act applied uniformly across jurisdictions and across public health emergencies. The United States therefore respectfully submits this Statement of Interest to assist the Court in resolving the pending motion to remand should the Court determine that the allegations in Plaintiff's Complaint fall within the ambit of the Act.

## **BACKGROUND**

Congress has established procedures "to prepare for, protect against, respond to, recover from, or mitigate" national emergencies, 6 U.S.C. § 314, and has provided that "[t]he Secretary of Health and Human Services shall lead all Federal public health and medical response to" such emergencies, 42 U.S.C. § 300hh. The PREP Act is a crucial part of the comprehensive federal effort to promote the "[r]apid distribution and administration of medical countermeasures" in response to a public health emergency, *id*. § 300hh-1(b)(2). The statute vests the Secretary with the authority to determine the existence or credible future risk of a public health emergency, and to issue a declaration recommending administration of specified countermeasures. *See id*. § 247d-6d(b).

Successful distribution and administration of these countermeasures, including diagnostic tests, therapeutics, and vaccines, depends on the cooperation of private-sector partners, as well as state and local officials across the nation. To encourage such cooperation and to maximize the efficiency of the national response to public health emergencies, Congress provided broad immunity to "covered persons," *id*. § 247d-6d(i)(2), for claims relating to the administration to or use by an individual of countermeasures that aid in that response. *Id*. § 247d-6d(a) (including "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure").

PREP Act immunity is sweeping, applying "to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure,

including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." *Id*. § 247d-6d(a)(2)(B). In other words, all damages actions for conduct relating to covered persons' administration of countermeasures specified in a PREP Act declaration are preempted.

In place of tort remedies, Congress created the Covered Countermeasure Process Fund to compensate eligible individuals for serious physical injuries or deaths from pandemic, epidemic, or security countermeasures identified in declarations issued by the Secretary. *See id*. § 247d–6e. The PREP Act also creates, as "the sole exception to the immunity from suit and liability," an "exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct" of that person. *Id.* § 247d-6d(d)(1); *see also id.* § 247d-6d(c), (e)(1).

In response to the COVID-19 pandemic, the Secretary of Health and Human Services has issued a Declaration recommending the use of various "covered countermeasures." *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21,012 (Apr. 15, 2020), and 85 Fed. Reg. 35,100 (June 8, 2020), and 85 Fed. Reg. 52,136 (Aug. 24, 2020), and 85 Fed. Reg. 79,190 (Dec. 4, 2020), *available at* https://www.phe.gov/Preparedness/legal/prepact/Pages/4-PREP-Act.aspx.

The Declaration defines "covered countermeasures" broadly to include "all qualified pandemic and epidemic products under the PREP Act" (*e.g.*, "any antiviral, any drug, any biologic, any diagnostic, any other device . . . to diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom," that is approved or authorized for emergency use by the Food and Drug Administration, among other products). *Id*. It interprets

"administration" thereof to mean "physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures." 85 Fed. Reg. at 79,197. The Declaration also states that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." *Id*. In particular, "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d-6d." *Id*. For example, "where there is only one dose of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional," if the "healthcare professional administers the one dose to the person who is more vulnerable to COVID-19," "the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population 'relat[es] to . . . the administration to' the person in a vulnerable population" for PREP Act purposes. *Id*. Additionally, the latest amendment to the Declaration states that the Declaration "must be construed in accordance with the Advisory Opinions of the Office of the General Counsel" and incorporates those Advisory Opinions as part of the Declaration. *Id*. at 79,194-95.[1]

---

[1] *See, e.g.*, Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act (Apr. 17, 2020, as modified on May 19, 2020), *available at* https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-advisory-opinion-hhs-ogc.pdf; Advisory Opinion 20-02 (May 19, 2020), *available at* https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/advisory-opinion-20-02-hhs-ogc-prep-act.pdf; Advisory Opinion 20-03 (Oct. 22, 2020, as modified on Oct. 23, 2020), *available at* https://www.hhs.gov/guidance/sites/

## **STATEMENT**

The Supreme Court first recognized the doctrine of complete preemption as a basis for federal-question removal jurisdiction under 28 U.S.C. § 1441(a) over 50 years ago, identifying the Labor Management Relations Act as a complete-preemption statute. *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968). Since then, the Court has extended the doctrine to two other statutes, the Employee Retirement Income Security Act ("ERISA") and the National Bank Act. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7–11 (2003) (National Bank Act completely preempts state law); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987) (ERISA completely preempts state law); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (same). Notably, the Second Circuit has applied the doctrine to the Air Transportation Safety and System Stability Act ("ATSSSA"), which is structurally similar to the PREP Act. *In re WTC Disaster Site*, 414 F.3d 352, 375 (2d Cir. 2005). And a state appellate court in New York has determined that the PREP Act is a complete-preemption statute, in response to litigation stemming from the H1N1 flu pandemic. *Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 143–45 (N.Y. App. Div. 2012) (dismissing state-law complaint for lack of jurisdiction).

Complete preemption is jurisdictional in nature: by establishing an exclusive federal cause of action, a statute may permit removal via federal question jurisdiction even of a complaint pleading only state-law causes of action. A complete-preemption statute reflects Congress's intent to "so completely pre-empt a particular area that any civil complaint raising [a] select group of claims is

---

default/files/hhs-guidance-documents/AO3.1.2_Updated_FINAL_SIGNED_10.23.20.pdf;
Advisory Opinion 20-04 (Oct. 22, 2020, as modified on Oct. 23, 2020), *available at*
https://www.hhs.gov/guidance/
sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf;
*see also* Advisory Opinion 21-01 (Jan. 8, 2021), Dkt. No. 32 at 3–7.

*necessarily* federal." *Metro. Life Ins. Co.*, 481 U.S. at 63–64 (emphasis added). In other words, the existence of such a powerfully preemptive federal cause of action causes the invalid assertion of a state cause of action to raise a federal question, because "a claim which comes within the scope of that [federal] cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank*, 539 at 8; *see Metro. Life Ins. Co.*, 481 U.S. at 65–66 (explaining that complete-preemption provisions "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule").

"The proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Beneficial Nat'l Bank*, 539 U.S. at 10 n.5.[2] It does not focus on the nature of any remedy the federal court or law may or may not provide. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 391 n.4 (1987) ("The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy . . . ." (quoting *Avco Corp.*, 390 U.S. at 561)). Instead, the complaint, any statutes on which the claims are based, and any other relevant materials (*e.g.*, plan documents in an ERISA case) determine whether the plaintiff's cause of action falls "within the scope" of a completely preemptive statute. *See Aetna Health Inc.*, 542 U.S. at 211. It does not matter whether the complaint expressly raises a federal claim or cites the completely preemptive federal statute—what matters is whether the complaint's causes of action fall within the federal statute's scope (and are therefore necessarily federal and grounds for removal). *See id.*

---

[2] *But see Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir. 2005) (seemingly requiring that "the federal statutory language demonstrates that Congress has manifested a clear intent that claims not only be preempted under the federal law, but also that they be removable"). Although *Palkow*'s language post-dates *Beneficial National Bank*, it cannot have disturbed the Supreme Court's rejection of any requirement to demonstrate Congressional intent to make certain claims removable for complete preemption to apply. 539 U.S. at 10 n.5.

Thus, complete preemption is fundamentally unlike other, substantive preemption doctrines (*e.g.*, express, implied, field, conflict, impossibility, or obstacle preemption, which do not in and of themselves give rise to removability. And complete preemption sidesteps the general rule that a federal defense (like other, substantive types of preemption) does not provide grounds for removal to federal court. *See Metro. Life Ins. Co.*, 481 U.S. at 63, 66; *Husvar v. Rapoport*, 430 F.3d 777, 781–82 (6th Cir. 2005); *see also Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944–45 (9th Cir. 2009) (explaining the different types of preemption). "The rationale is that in such situations the federal statutory laws 'supersede both the substantive and remedial provision of state' law creating a strong form of federal preemption—presumably because of the additional need for a strong form of national uniformity implied by Congress when it made federal court jurisdiction exclusive after broadly preempting state law." *Ritchie v. Williams,* 395 F.3d 283, 286 (6th Cir. 2005) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 11) (finding certain state-law copyright claims completely preempted under the Copyright Act).

The PREP Act is just such a complete-preemption statute with respect to the administration or use of covered countermeasures by covered persons under a declaration by the Secretary. Whenever a claim "for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" is brought against a covered person and a declaration under subsection (b) has been issued, that claim is necessarily federal and removable. 42 U.S.C. § 247d–6d(a).

Two key provisions of the PREP Act operate together to demonstrate its completely preemptive nature: the immunity provision and the exclusive alternative remedy provision.

*First*, the Act provides for immunity "under Federal and *State* law with respect to *all* claims for loss caused by, arising out of, relating to, or resulting from the administration" of

countermeasures specified by the Secretary. *Id*. § 247d-6d(a)(1) (emphasis added). "Loss" is broadly defined to "mean[] *any* type of loss, including . . . physical, mental, or emotional injury, illness, disability, or condition," and "fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring." *Id*. § 247d-6d(a)(2) (emphasis added). *See generally Parker*, 102 A.D.3d at 143 (quoting subsection (a) as demonstrating completely preemptive intent).

*Second*, the Act establishes, as the "sole exception" to subsection (a)'s immunity grant, "an exclusive Federal cause of action" for claims of willful misconduct resulting in death or serious physical injury. 42 U.S.C. § 247d-6d(d)(1). It also establishes an exclusive venue for such excepted claims: "only" before a three-judge panel of the United States District Court for the District of Columbia. *Id.* § 247d-6d(e)(1), (e)(5). Even such excepted claimants, though, must first apply for benefits through the federal Covered Countermeasure Process Fund, which permits individuals to make no-fault benefits claims for certain injuries. *See id.* § 247d-6e(d)(1). *See generally Parker*, 102 A.D.3d at 144 (quoting subsection (d) as demonstrating completely preemptive intent).

Together, these provisions show that Congress determined—in the limited context addressed by subsection (a) involving claims relating to the administration or use of covered countermeasures with respect to a public health emergency, as declared by the Secretary—that tort actions are not necessary or appropriate to deter tortious conduct, intentional or negligent, except as provided in the "exclusive" federal cause of action created by the statute itself. *See* 42 U.S.C. § 247d-6d(d)(1); *see also id.* § 247d-6d(c)(1)(B) (The Act "establish[es] a standard for liability that is more stringent than a standard of negligence in any form or recklessness."); *Parker*, 102 A.D.3d at 143–44 ("Considering the breadth of the preemption clause together with the sweeping language of the statute's immunity provision, we conclude that Congress intended to preempt all state law tort claims arising from the

administration of covered countermeasures by a qualified person pursuant to a declaration by the Secretary . . . .").

Moreover, reading these PREP Act provisions as completely preemptive accords with the reasons Congress enacted the law. An effective response to national health emergencies depends on the prompt and willing cooperation of private partners. Thus, the Act broadly immunizes covered persons from claims relating to their administration of specified countermeasures, while specifying exclusive alternative remedies for certain claims. Congress determined that the deterrent and compensatory effects of tort liability, which might be salutary in other contexts, would undermine the nation's ability to protect itself from epidemics and pandemics. This balance forms one key part of Congress's comprehensive scheme for developing and sustaining a national pandemic response, including the "[r]apid distribution and administration of medical countermeasures." 42 U.S.C. § 300hh-1(b)(2).

Two cases further support a completely preemptive reading of these PREP Act provisions in applicable cases.

*In re WTC Disaster Site* found in provisions of the ATSSSA "an intent to displace state-law remedies entirely" for damages claims arising out of the hijacking of planes on September 11, 2001. 414 F.3d at 375. Those provisions included "an exclusive federal remedy" in the form of a federal cause of action with exclusive venue in the United States District Court for the Southern District of New York. *Id.* The Second Circuit relied heavily on the exclusive alternative cause of action in finding that complete preemption applied, while also finding relevant the ATSSSA's compensation fund for victims. *Id.* at 373, 375. Congress passed the PREP Act, *see* Pub. L. No. 109–148, 119 Stat. 2680 (Dec. 30, 2005), just months after the *In re WTC Disaster Site* decision, *see* 414 F.3d at 352. And it included analogous provisions: substituting an exclusive federal claim for state law claims,

directing that such claims be filed in just one district court, and creating a victim compensation fund. With a proper focus on "whether Congress intended the federal cause of action to be exclusive," *Beneficial Nat'l Bank*, 539 U.S. at 10 n.5, it becomes clear that the PREP Act provisions discussed above "bespeak an intent to displace state-law remedies entirely for such damages claims" as fall within their ambit, *In re WTC Disaster Site*, 414 F.3d at 375.

Similarly, in *Beneficial National Bank*, the Supreme Court found the National Bank Act to be completely preemptive for reasons equally applicable here: That statute provides "the exclusive cause of action" for state usury claims against a national bank, 539 U.S. at 9, much like the PREP Act does for state claims against covered persons relating to the administration of covered countermeasures. The PREP Act "form[s] a system of regulations" for the nation's response to public health emergencies, displacing any state law that differs from or conflicts with it. *Id.* at 10 (quoting *Farmers' & Mechanics' Nat'l Bank v. Dearing*, 91 U.S. 29, 32–33 (1875)). The PREP Act thus "completely defines what constitutes" a cognizable claim against covered persons relating to the administration of covered countermeasures. *Id.* (quoting *Evans v. Nat'l Bank of Savannah*, 251 U.S. 108, 114 (1919)). And the "same federal interest that protected national banks from . . . state taxation" and interference supports similar protection for those vital to the nation's pandemic response. *Id.* at 11 (recognizing "the special nature of federally chartered banks"). "Because [the PREP Act] provide[s] the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim" of loss against a covered person relating to the administration of a covered countermeasure. *Id.*

A recent and oft-cited case to the contrary, *Maglioli v. Andover Subacute Rehabilitation Center*, No. 20-6605, 2020 WL 4671091 (D.N.J. 2020), *appeal docketed*, No. 20-2834 (3d Cir. Sept. 10, 2020), appears to have interpreted the complete preemption doctrine and the PREP Act

imprecisely. *Maglioli* focuses almost entirely on subsection (b)(8), an express conflict-preemption provision. *See id.* at *7, *9.[3] It relegates subsection (a) to mere "background." *Id.* at *6. This approach gets it backwards: subsections (a) and (d) operate together to demonstrate that Congress intended an exclusive federal cause of action for "claims for loss" within (a)'s ambit, whereas (b)(8) expressly preempts (without completely preempting, in a jurisdictional sense) *other* laws, legal requirements, and therefore claims beyond (a)'s ambit. Thus, the court's holding "that the PREP Act does not so occupy the field as to squeeze out state court jurisdiction over what are state-law claims of negligence and require an exclusive federal forum," *id.* at *11, frames the inquiry incorrectly. Field preemption is a different doctrine than complete preemption and the PREP Act does include a completely preemptive provision, as evidenced by its creation of immunity for a certain class of claims and an exclusive federal forum for exceptions to that immunity. 42 U.S.C. § 247d-6d(a), (d)(1); *see also Parker*, 102 A.D.3d at 143 (citing subsection (b)(8) as demonstrating completely preemptive intent).[4]

Moreover, these and other cases finding that the PREP Act did not completely preempt certain claims should not be read to hold that the PREP Act is *never* completely preemptive. Rather, such cases have typically found that the claims pleaded did not, in the court's view, arise from the

---

[3] This provision expressly preempts (in the ordinary, non-jurisdictional sense) any state or local law that conflicts with this part of the Act:

> no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision . . . or requirement that . . . is different from, or is in conflict with, any requirement applicable under this section [§ 247d-6d] and relates to . . . the administration by qualified persons of the covered countermeasure.

42 U.S.C. § 247d-6d(b)(8).

[4] This is not to say that the *Maglioli* court got the result there incorrect as well. It may be that the complaint there raised only claims outside subsection (a)'s ambit (*i.e.*, claims that were not subject to complete preemption) such that it was correct to remand that case. In any event, the *Maglioli* court was correct to observe that careful "case by case analysis" is required. 2020 WL 4671091 at *9.

use or administration of a covered countermeasure. *See, e.g.*, *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-CV-1198, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020), *appeal docketed*, No. 20-3287 (3d Cir. Nov. 10, 2020) (finding claims outside the purview of the PREP Act); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10, 2020) (finding defendants provided no support for complete preemption argument "other than stating the standard"), *appeal docketed*, No. 20-56067 (9th Cir. Oct. 16, 2020); *Haro v. Kaiser Found. Hosps.*, No. CV 20-6006, 2020 WL 5291014, at *3 (C.D. Cal. Sept. 3, 2020) ("Haro's minimum wage claim is not causally connected to any of Kaiser's covered countermeasures."); *Baskin v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2267, 2020 WL 4815074, at *6 (D. Kan. Aug. 19, 2020) (finding plaintiff's claim of loss not causally connected or related to the administration or use of covered countermeasures); *Maglioli*, 2020 WL 4671091, at *10 (finding social distancing, quarantining, and other measures not covered countermeasures and therefore not within the scope of the Act). Those cases are limited to their facts, which may or may not be analogous to the Complaint in this case, and should not be read to hold that the PREP Act is not a completely preemptive statute *per se*.

Indeed, as discussed above, these PREP Act "provisions supersede both the substantive and the remedial provisions of state [tort] laws and create a federal remedy for [certain claims of loss relating to covered countermeasures] that is exclusive, even when a state complainant . . . relies entirely on state law. Because [they] provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of [loss] against a [covered person in connection with their use or administration of a covered countermeasure]." *Beneficial Nat'l Bank*, 539 U.S. at 11.

## <u>CONCLUSION</u>

The United States takes no position on whether the Complaint includes any claim that falls within the ambit of 42 U.S.C. § 247d-6d(a), and thus necessarily takes no position as to whether any particular claim in this case is completely preempted by the Act. If such a claim has been pled, however, it is necessarily federal and the Complaint is removable because of the completely preemptive nature of that PREP Act provision.[5]

[THIS SPACE INTENTIONALLY LEFT BLANK]

---

[5] In doing so, "considerable weight should be accorded to" the Department of Health and Human Services' construction of the PREP Act (as evidenced in the Declaration and Advisory Opinions incorporated into it cited above), because the Act is "a statutory scheme [HHS] is entrusted to administer." *United States v. Mead Corp.*, 533 U.S. 218, 227–28 (2001) (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

Dated: January 19, 2021.                    Respectfully Submitted,

                                            JOHN V. COGHLAN
                                            Deputy Assistant Attorney General

                                            DONALD Q. COCHRAN
                                            United States Attorney
                                            Middle District of Tennessee

                                            By: s/ Mark H. Wildasin
                                            MARK H. WILDASIN (B.P.R. #015082)
                                            Assistant United States Attorney
                                            110 9th Avenue South, Suite A-961
                                            Nashville, TN  37203-3870
                                            Telephone: (615) 736-5151
                                            Email: mark.wildasin@usdoj.gov

                                            ERIC BECKENHAUER
                                            Assistant Branch Director

                                            CHARLES E.T. ROBERTS
                                            Pennsylvania State Bar No. 326539
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, DC 20001
                                            Tel: (202) 305-8628
                                            E-mail: charles.e.roberts@usdoj.gov

                                            *Counsel for the United States*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Statement of Interest of the United States was filed on January 19, 2021 with the Court's Electronic Case Filing System (CM/ECF), and service was made upon all persons registered in this case, including:

Clinton L. Kelly  
F. Dulin Kelly  
The Kelly Firm  
629 E. Main Street  
Hendersonville, TN 37075  
Email:  clint@kellyfirm.net  
Email:  dulin@kellyfirm.net  

Howard Hayden  
Minton P. Mayer  
Quintairos, Prieto, Wood & Boyer, P.A.  
424 Church Street  
Nashville, TN 37219  
Email:  howard.hayden@qpwblaw.com  
Email:  minton.mayer@qpwblaw.com  

s/ Mark H. Wildasin  
MARK H. WILDASIN  
Assistant United States Attorney

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Estate of Clara T. Troilo, deceased, by Frank Troilo, Executor of the Estate of Clara T. Troilo | Rose Tree Place, NSL Rose Tree Place, LLC, et al. |

**(b)** County of Residence of First Listed Plaintiff    Gloucester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gerald B. Baldino, 308 E. Second St., Media, PA 19063
610-891-9212

Attorneys *(If Known)*

Lawrence D. Jackson, Lewis, Brisbois, Bisgaard & Smith, LLP, 550 E Swedesford Road, Ste. 270, Wayne, PA 19087. 215-977-4100

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[x] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1331, 1441, 1442(a)(1) and 42 U.S.C. 247d6d adn 85 Fed. Reg. 15198- PREP Act

Brief description of cause:
Plantiff alleges liability related to health facility's response to COVID-19 outbreak.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE    January 10, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
By:    Lawrence D. Jackson, Esquire
Identification No. 56140
550 E. Swedesford Road, Suite 270                    Attorneys for Defendants
Wayne, PA  19087                                     FMW RRI II, Inc.
(215) 977-4100

| | | |
|---|---|---|
| ESTATE OF CLARA T. TROILO, deceased | : | COURT OF COMMON PLEAS |
| by FRANK TROILO, Executor of the ESTATE | : | PHILADELPHIA COUNTY |
| OF CLARA T. TROILO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | DECEMBER TERM, 2021 |
| | : | NO.: 000073 |
| ROSE TREE PLACE, NSL ROSE TREE PLACE, | : | |
| LLC, d/b/a ROSE TREE PLACE, WATERMARK | : | |
| RETIREMENT COMMUNITIES, INC., | : | |
| WATERMARK RETIREMENT COMMUNITIES, | : | |
| LLC, WATERMARK OPERATOR, LLC, | : | |
| CYNTHIA EVANS, and KAREN MLAWSKY, | : | |
| Defendants. | : | |
| | : | |

## PRAECIPE TO ENTER NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §1446(d), notice is hereby given that on the  10th day of January,

2021, Defendants Watermark Communities, LLC f/k/a Watermark Retirement Communities, Inc.,

Watermark Operator, LLC d/b/a Rose Tree Place, Cynthia Evans and Karen Mlawsky, filed a Notice

of Removal in the United States District Court for the Eastern District of Pennsylvania to remove the

above-captioned action from this Court to the United States District Court for the Eastern District of

Pennsylvania.

Attached hereto is a copy of the Notice of Removal.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

By:     */s/ Lawrence D. Jackson*
        Lawrence D. Jackson, Esquire
        550 E. Swedesford Road, Suite 270
        Wayne, PA 19087
        (215) 977-4100

        Attorneys for Defendants
        Watermark Communities, LLC f/k/a
        Watermark Retirement Communities,
         Inc., Watermark Operator, LLC d/b/a
         Rose Tree Place, Cynthia Evans and
         Karen Mlawsky

Dated:  January 10, 2022

## **CERTIFICATE OF SERVICE**

I, Lawrence D. Jackson, Esquire, hereby certify that I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon counsel of record.

*/s/ Lawrence D. Jackson*
Lawrence D. Jackson

DATED:  January 10, 2022

4871-3735-1177.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___95 Trent Road, Turnersville, NJ  08012_____

Address of Defendant: ___500 Sandy Bank Road, Media, PA  19063_____

Place of Accident, Incident or Transaction: ___500 Sandy Bank Road, Media, PA 19063_____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __January 10, 2022_____  _____  __56140_____
 *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10.  Social Security Review Cases
☐ 11.  All other Federal Question Cases
   *(Please specify):* __PREP Act_____

**B.  Diversity Jurisdiction Cases:**

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: __January 10, 2022_____  _____  __56140_____
 *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)