IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF CLARA T. TROILO, deceased, by FRANK T. TROILO, Executor of the Estate of CLARA T. TROILO, <br><br> *Plaintiff*, <br><br> v. <br><br> ROSE TREE PLACE, NSL ROSE TREE PLACE, LLC d/b/a ROSE TREE PLACE, WATERMARK RETIREMENT COMMUNITIES, INC., WATERMARK RETIREMENT COMMUNITIES, LLC, WATERMARK OPERATOR, LLC, CYNTHIA EVANS and KAREN MLAWSKY, <br><br> *Defendants*. | Civil Action <br><br> No. 22-cv-00097 |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                                                      **August 16, 2023**

On February 9, 2023, I remanded this case back to the Philadelphia Court of Common Pleas, finding that Defendants had not demonstrated a proper basis for federal jurisdiction and that removal to federal court had been improper. (ECF No. 14, "Order" or "Remand Order"). Defendants have appealed my Order to the United States Court of Appeals for the Third Circuit and have requested that I stay my Order until the appeal is resolved. Defendants assert that the crux of the appeal is a matter of first impression in this Circuit, and that it implicates jurisdictional questions that warrant resolution before judicial resources are expended to litigate the matter in state court. Because I find that Defendants are not likely to succeed on the merits and that Plaintiff will suffer harm if I issue a stay, the motion will be denied.

1

**Factual And Procedural Background**

Plaintiff, the estate of Clara T. Troilo, originally filed this lawsuit in the Court of Common Pleas of Philadelphia against Defendants Rose Tree Place, an assisted living facility. Ms. Troilo, a former resident of one of Defendants' facilities, died on April 29, 2020 after contracting COVID-19.  As I explained in my Opinion on the motion to remand:

> Plaintiff alleges that Defendants failed to alert residents and their families of positive COVID-19 cases in the facility, and that Defendants' communications "contained material, false, deceptive, fraudulent, and deceitful statements intended to induce residents and their families and loved ones into a false sense of security and to conceal, hide, mask, and cover-up the deadly presence of COVID-19 in the facility." (Id. ¶¶ 28–29). Plaintiff claims that during March and April of 2020, Defendants notified residents and families "about service and policy changes and COVID issues," but did not disclose the positive test results at the facility. (Id. ¶ 30). As an example, Plaintiff notes that on April 9, 2020, Defendants sent residents' family members an email update stating that no positive COVID-19 test results had been reported at the facility. (Id. ¶ 31). Plaintiff contends this statement and others were false, fraudulent, and misleading because Defendants were aware of positive COVID-19 test results among residents as early as February of 2020 but failed to inform residents and families until April 22, 2020. (Id. ¶ 32). According to Plaintiff, such statements caused Ms. Troilo's death because the statements "induced [Ms. Troilo] and her family into a false sense of security" and "deprived them of the ability to make proper and informed decisions" regarding her care. (Id. ¶ 41).

(Op. on Mot. to Remand, p. 2, ECF No. 13) ("Troilo").

Plaintiff brought claims for fraud, negligent misrepresentation, wrongful death, violations of consumer protection law, breach of contract, and a survival action. Defendants removed this case to federal court, and Plaintiff filed a motion to remand.  Defendants opposed remand, arguing that three grounds for federal jurisdiction existed and thus removal was proper: (1) complete preemption under the Public Readiness and Emergency Preparedness Act ("PREP Act"); (2) federal officer jurisdiction under 28 U.S.C. § 1442; and (3) federal question jurisdiction under Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005).  I granted the motion to remand, finding that removal was improper because none of the above constituted a proper basis for federal jurisdiction.

2

**Legal Standards and Analysis**

A stay of proceedings "is not a matter of right," but "an exercise of judicial discretion." Nken v. Holder, 556 U.S. 418, 433 (2009). In determining whether to issue a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicants will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the parties interested in the proceeding; and (4) where the public interest lies." Id. at 434. The first two of these factors are "the most critical." Id.

A.      **Likelihood of success on the merits**

A "better than negligible" chance of success on the merits is "not enough" to warrant a stay, id. at 434, but it is not required that success be "more likely than not." Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011) (discussing the "merits" requirement in the context of temporary restraining orders and preliminary injunctions). Instead, a plaintiff must show "a reasonable chance, or probability, of winning." Id.

By way of background, Defendants removed this case to federal court in part because they contended that Plaintiff's claims were completely preempted by the PREP Act. The PREP Act authorizes the Secretary of the Department of Health and Human Services ("DHHS") to issue a declaration in response to a public health emergency. A PREP Act declaration provides immunity from suit for claims of loss "caused by, arising out of, relating to, or resulting from" the administration of "covered countermeasures" by certain "covered persons" during the public health emergency. 42 U.S.C. §§ 247d-6b, 247d-6e. An exception to immunity for covered persons exists for a claim of death or serious physical injury proximately caused by willful misconduct. Id. § 247d-6d(d)(1). The Act describes such a claim as "an exclusive Federal cause of action." Id.

According to a declaration issued in March of 2020 by the Secretary of the Department of Health and Human Services, whose determinations regarding the scope of the PREP Act are

3

controlling, the "administration" of covered countermeasures includes the actual physical provision of the countermeasures, as well as management and operation of countermeasure programs, but "only insofar as those activities directly relate to the countermeasure activities."[1] So, examples of conduct covered by the Act include the actual provision of COVID-19 tests, as well as operational decisions related to testing programs such as implementation of security measures and queuing protocols at testing sites. In my Opinion on the motion to remand, I found that Plaintiff's claims were not preempted by the PREP Act because the act of making false statements and misrepresentations regarding test results is not "related to the administration" of those tests under the Secretary's definition.

Defendants argue in their Motion to Stay that they are likely to succeed on the merits of their appeal because the Third Circuit "has not ruled on the breadth of the term 'administration,' the breadth of the 'causal relationship' requirement as it relates to the term administration or the inclusion of the 'management and operation' of a countermeasure program/facility (not just the physical provision of a countermeasure) under PREP Act protections." (Def's Br. p. 9). More

---

[1] The Secretary's March 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 states:

> Administration of a Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures.
>
> The definition of ''administration'' extends only to physical provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities.

85 Fed. Reg. 15200.

specifically, Defendants assert that the DHHS Secretary has instructed that (in Defendants' words) "allegations of a death arising from or related to the administration of COVID-19 tests—including the use of that test result information to isolate and treat residents or otherwise manage and operate a COVID-19 countermeasure program and facility, as well as the use of countermeasure program notifications—constitutes 'administration' under the PREP Act." (Def's Br. p. 2) (citing 85 Fed. Reg. 15,200)). "[D]ecisions as to how to administer COVID-19 testing," Defendants contend, "including the timeliness of disclosure of any positive results, are acts 'related' to the 'administration of a countermeasure program or facility.'" (Def's Br. p. 7–8).

Defendants assert that this is an issue of first impression in this Circuit and that no other circuit courts have directly addressed the scope of the terms "administration" or "management and operation" in the Act. The Sixth Circuit has analyzed the issue, but Defendants maintain that the case is distinguishable. In Hudak v. Elmcroft of Sagamore Hills, 58 F.4th 845, 856 (6th Cir. 2023), the Sixth Circuit found the defendant nursing home's failure to wear facemasks or follow infection-control procedures did not constitute "willful misconduct" that was "related" to the "administration" of "covered countermeasures." The court reasoned that the failure to administer countermeasures differed from the actual administration of countermeasures. Id. ("Put differently, [the plaintiff] alleges that [the defendant] was wrong not to use medical countermeasures, not that it engaged in wrongful actions that had a causal relationship with the administration to or use . . . of a countermeasure."). The Sixth Circuit also rejected the defendant's argument, based on the DHHS Secretary's declaration, that its "management and operation" of the assisted living facility established a connection between the plaintiff's injury and the administration of covered countermeasures. Id. at 856; 85 Fed. Reg. 15,201. The court emphasized that the Secretary's declaration defining the administration of countermeasures to include "the management and

5

operation of locations" encompassed only those activities "*taken for the purpose of distributing and dispensing countermeaures*." Hudak, 58 F.4th at 856–57 (quoting 85 Fed. Reg. 15,201) (emphasis in original). Defendants note that here, unlike Hudak, Plaintiff alleges that Defendants took *actions* which caused Ms. Troilo's death—that is, Defendants misinformed residents and their families about the results of COVID-19 tests. Defendants also assert that unlike the defendant facility in Hudak, it was engaged in the "management and operation of countermeasure programs."[2]

Plaintiff responds that Defendants mischaracterize the issue on appeal. The conduct alleged, Plaintiff clarifies, is the act of deliberately misinforming residents and their families about test results, not the use of that test result information to isolate and treat residents, or the failure to provide timely disclosure of such results. (Pl. Br. p. 5) (first quoting Def's Br. p. 2, 7–8, then quoting Troilo, at 8–9). Plaintiffs conclude that because Defendants have not identified any case law to support their position, and my decision to remand was consistent with other federal courts that have examined the issue, Defendants have failed to show a reasonable chance of winning on appeal. Id. at 6.

In response, Defendants contend that the notion recognized in Troilo (while decisions on when and how to report test results may be related to the administration of a covered countermeasure, false statements or misrepresentations about those results are not) "is legally

---

[2] Defendants misconstrue the Hudak court's reasoning on this point. The court in Hudak explicitly rejected the notion that an entity engaged in the management and operation of countermeasure programs could be liable "for injuries unrelated to its provision of the covered countermeasure solely because it provides countermeasures." Hudak, 58 F.4th at 857. Therefore, the fact that Defendant was engaged in the management and operation of countermeasure programs is insufficient; that management and operation must also be alleged to have caused the injury. The claims in Hudak did not fall within the PREP Act because the plaintiff there had not alleged that its injury was "caused by [the defendant's] distribution or dispersal of countermeasures, but rather by its failure to use countermeasures." Id.

6

erroneous because the distinction circles back on itself." (Def's Reply Br. p. 3). On appeal, Defendants plan to argue that the examples of "administration" provided in the Secretary's declaration are indistinguishable from the conduct alleged in this case. In addition, Defendants assert that this case should have remained in federal court because falsehoods are precisely what the PREP Act's "willful misconduct" exception to immunity covers.[3] Finally, Defendants argue that once I determined that willful misconduct was alleged, the definition of "administration" under the Act was for the District Court for the District of Columbia ("D.D.C.") to decide, because that court has exclusive jurisdiction over willful misconduct claims under the Act. Id. at 5 (citing 42 U.S.C §§ 247d-6d(d)(1), (e)(1)).

I agree with Plaintiff that Defendants mischaracterize the issue on appeal, and they have not demonstrated a "reasonable probability of success on the merits." Defendants describe the alleged conduct in broad terms, such as "the use of test result information," "the use of countermeasure program notifications," "decisions as to how to administer COVID-19 testing," "the timeliness of disclosure," and "the reporting of test results." (Def's Br. p. 2, 7–8; Def's Reply Br. p. 4). But the misconduct alleged by Plaintiff is not just deficient reporting of, or decisions regarding, COVID-19 testing. Plaintiff alleges that Defendants fraudulently misrepresented test results. (Compl. ¶¶ 35–36, 41–42).[4] As discussed in Troilo, such conduct does not relate to the

---

[3] The Act defines "willful misconduct" as an act or omission that is taken—
    (i) intentionally to achieve a wrongful purpose;
    (ii) knowingly without legal or factual justification; and
    (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.

42 U.S.C. § 247d-6d(c)(1)(A).

[4] Plaintiff also alleges that Defendants' inaction, or failure to make residents and families aware of positive COVID-19 test results, caused Ms. Troilo's death. (Compl. ¶ 28, 41–42). Such claims involving *failure* to act do not fall within the scope of the PREP Act. 42 U.S.C. §§ 247d-6d(a)(1); see Estate of Maglioli v. Andover Subacute Rehabilitation Ctr. I, 478 F. Supp. 3d 518, 532 (D. N.J. 2020); Beaty v. Delaware Cnty., 2021 WL 402 6373, at *2 (E.D. Pa. 2021).

administration of COVID-19 testing. See Rosen v. Montefiore, 582 F. Supp. 3d 553, 561 (N.D. Ohio 2022); Estate of Spring v. Montefiore Home, 2022 WL 1120381, at *5 (N.D. Ohio Apr. 14, 2022). To be sure, the DHHS Secretary comprehensively defined the term "administration" in the March 2020 declaration discussed above. The false reporting or intentional misrepresentation of test results falls outside this definition. The examples in the declaration of "security and queuing" confirm this conclusion: those activities are necessary to the administration of COVID-19 tests, while the issuance of falsehoods and misrepresentations are not.

Lastly, Defendants' argument that this court did not have jurisdiction to examine the scope of immunity under the Act is misplaced. Section 42 U.S.C. § 247d-6(d)(1) provides that "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct" is an exception "to the immunity from suit and liability of covered persons *set forth in subsection (a)*," and § 247-6(e)(1) provides for the D.D.C's exclusive jurisdiction over such causes of action. (emphasis added). But the willful misconduct exception is limited to "claims for loss caused by, arising out of, relating to, or resulting from the *administration to or the use by an individual of a covered countermeasure*" § 247d-6(a)(1). Thus, a subsection (d)(1) willful misconduct claim must be one for loss relating to the administration of a covered countermeasure before the D.D.C.'s exclusive jurisdiction is triggered. Because I have already found that Plaintiff's claims do not relate to the administration of a covered countermeasure, Defendants' jurisdictional argument fails.

For the foregoing reasons, I conclude that Defendants have not made a strong showing that they are likely to succeed on the merits of their appeal, and this factor weighs against the issuance of a stay.[5]

## B. Irreparable Injury to Movant, Injury to Interested Parties, And The Public's Interest

Harm is considered "irreparable" if it is not redressable "by a legal or equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). To satisfy this factor, the movant must demonstrate, "irreparable harm is likely [not merely possible] in the absence of [a] [stay]." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). Defendants assert that if a stay is not issued and the Third Circuit reverses on the immunity issue or federal officer jurisdiction, they will have been forced to "endure state court prosecution in a matter where they would have been statutorily entitled to proceed in federal court as a federal officer or pursuant to the PREP Act." (Defs.' Br. p. 12). Defendants also claim that forcing them to engage in "unnecessary and duplicative" litigation in state court while their appeal is pending

---

[5] In their reply brief, Defendants argue they are also likely to succeed on their argument that federal officer jurisdiction exists.

As explained in my Remand Opinion, a person acting under an officer or agency of the United States may remove a state court action commenced against them to federal court. 28 U.S.C. § 1442(a)(1). I found that federal officer jurisdiction did not exist in this case because Defendants were simply subject to federal regulations – as many other private sector entities were at the beginning of the pandemic – in response to the emergency declaration. Defendants argue in their reply brief that, as a nursing home formally designated by the federal government as a "program planner" during the pandemic, they were acting under the federal government when they committed the alleged conduct at issue. (Def. Reply Br. p. 4, ECF No. 30). Defendants do not cite any cases in which a stay was issued based on a similar argument for federal officer jurisdiction. Defendants cite to one case from the District of Connecticut in which the court issued a stay, but that motion was unopposed, and that court did not provide any analysis in its order. Order on Mot. to Stay, p. 1, Flynn v. Saybrook Healthcare Center, Inc., No. 3:22-cv-00634-KAD (D. Conn.). Virtually all other courts, in this district and elsewhere, have rejected this argument. (Troilo, p. 12) (citing cases). For this reason, I find that the likelihood of success on the merits factor still weighs against the issuance of a stay pending appeal.

constitutes irreparable harm, and that failure to issue a stay would render their statutory right to appeal "hollow." (Id.) (citing Northrup Grumman Tech. Servs., Inc. v. SynCorp Int'l LLC, No. 16-cv-534, 2016 U.S. Dist. LEXIS 78864, *4 (E.D. Va. June 16, 2016)).

Plaintiff maintains that Defendants will not be irreparably harmed in the absence of a stay, as they may assert their immunity argument and other defenses in state court. (citing Leroy v. Hume, 563 F. Supp.3d 22 (E.D.N.Y 2021)). Further, Plaintiff notes that any threat to Defendants' right to appeal is speculative, as the right would only be affected if the state court ruled on the merits of Plaintiff's claims before the Third Circuit reaches the merits of the appeal. Plaintiff lastly argues the state court litigation is not "unnecessary and duplicative," as any discovery exchanged in state court would be relevant to the adjudication of the claims if they are sent back to federal court.

Defendants have failed to show that defending against Plaintiff's claims in state court would cause them irreparable harm. Defendants' preference for litigating in a federal forum does not amount to irreparable injury because the same defenses are still available to them in state court. See Pratt v. JACC Healthcare Ctr. Of Norwich LLC, 2022 U.S. Dist. LEXIS 205142, *20-21 (D. Conn. Nov. 10, 2022) ("[Defendant] remains free to assert its ordinary preemption defense in state court."); see also Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 277-78 (2d Cir. 2005) ("[Defendant] is free to make this [preemption] argument in state court, and ultimately, to seek federal-court review by petitioning the Supreme Court for certiorari if [Defendant] loses in the state courts.").

Moreover, Defendants' concerns about duplicative litigation are speculative, as this case is in its nascent stages, and it is unlikely the Philadelphia Court of Common Pleas will rule on the merits of the case before the Third Circuit rules on the appeal. See Leroy, 563 F. Supp. 3d at 30. If the Third Circuit were to rule on the appeal and remand for further proceedings in federal court,

any of the discovery progress made in state court would be transferable and relevant in the federal case. Carre v. All. HC II LLC, 2022 U.S. Dist. LEXIS 213660, *9 (D.N.J. Nov. 8, 2022) (citing Leroy, 563 F.Supp.3d at 30) ("Any subsequent discovery obtained in state court will be relevant to the case's adjudication even if the case is subsequently removed to federal court. As such, [the Court does] not find litigation of parties' claims in state court to amount to irreparable injury to defendants."). For these reasons, Defendants would not be irreparably harmed absent a stay.

The Third Circuit utilizes a "balancing of the harms" approach to the four factor test on motions to stay. Revel AC, Inc. v. IDEA Boardwalk LLC, 802 F.3d 558, 569-71 (3d Cir. 2015). If the first two factors are satisfied, the court "balance[s] the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the [] injury into the balance of harms is unnecessary, and the stay should be denied without further analysis." Id. (citing In re Forty-Eight Insulations, 115 F.3d 1294, 1300-01 (7th Cir. 1997)). As I have found Defendants have failed to satisfy the first two factors, I am not obligated to address the potential for injury to other interested parties or the interest of the public. However, I note that Plaintiff will suffer harm if the litigation and their potential recovery is delayed any further, and I see no reason why the public's interest would be furthered by a stay.

**Conclusion**

For the reasons set out above, I will deny Defendants' Motion to Stay. An appropriate order follows.